Irene D. Addison v. Commissioner.
Addison v. Commissioner
Docket No. 13764.
United States Tax Court
1948 Tax Ct. Memo LEXIS 101; 7 T.C.M. (CCH) 644; T.C.M. (RIA) 48177; August 31, 1948
Marion Hirschburg, Esq., for the petitioner. William B. Springer, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: This proceeding involves a deficiency in income tax for the calendar year 1944 determined in the amount of $1,131.99. The deficiency resulted from the disallowance *102 by the Commissioner of a deduction from petitioner's taxable income of $3,569.35 which she had expended in 1944 for legal fees, court costs, and bond expense, and which amount she claimed to be a nontrade and nonbusiness expense. Findings of Fact Petitioner filed her income tax return for 1944 with the collector of internal revenue for the district of Iowa. Her address is Des Moines, Iowa. In 1920 she came from England to reside with her brother who had recently lost his wife. She was then 20 years of age and immediately became employed solely as her brother's housekeeper and helped him rear his daughter Louise, who has since married and is now known as Louise Duro Shaw. Petitioner received her living expenses, clothing and spending money as compensation. Her brother, John Heber Duro, died April 10, 1941. During his lifetime her brother transferred certain properties to the petitioner without any expressed consideration. In 1922 he gave her 290 shares of stock in the Des Moines Ice & Fuel Co. This company sold its property in 1926 to the Central Service Company and as a result thereof petitioner received $21,750 in cash and stock in the Central Service Company having a value *103 on April 22, 1943, of $12,397.50. In 1929 petitioner received from her brother 600 shares of stock in the Great Western Coal Company which she sold in 1939 for $26,678.86. In 1931 he gave her a farm known as Runnels Farm which, in April 1943, had a value of $6,875. In 1930 she received a gift of bonds of the Interurban Railway Company of the face value of $5,000 which had an actual value in April 1943 of $325. At different times Duro gave his sister diamonds of an undisclosed value which at some undisclosed time had been appraised at $3,750. The above sets forth all of the gifts of substantial value received by the petitioner from her brother. She received no property from any other source and no income except such as was derived from the above gifts. Prior to April 22, 1943, the petitioner had disposed of a very large portion of the property received from her brother and had invested and reinvested the proceeds thereof as a result of approximately 1,500 to 2,000 transactions so that on April 22, 1943, she held various securities of an undisclosed value which had cost her $188,818.59. In addition to the above securities which she acquired on the market, she still retained on April 22, 1943, out *104 of the original transfers from her brother: 217 1/2 shares of stock in the
Central Service Co.
$12,397.50
Runnels Farm
6,875.00
Interurban Railway Co. bonds
325.00
Diamonds (Approximately)
3,000.00
Total
$22,597.50
According to a document left by John Heber Duro as and for his last will and testament, the petitioner was named executrix and sole beneficiary of his estate. However, the document was judicially determined not to be the last will and testament of the decedent on the ground that it was obtained by fraud and undue influence of the petitioner. Petitioner thereupon surrendered to Louise Duro Shaw, the daughter and sole heir of the decedent, real estate and personal porperty of the approximate value of $75,000 and the said Louise Shaw succeeded as administratrix of her father's estate. On April 22, 1943, Louise individually and as administratrix of her father's estate, filed a petition in equity in the District Court of Polk County, Iowa, naming petitioner herein as defendant. In the petition she set forth a schedule of property which she alleged Irene D. Addison had either obtained from her brother or had procured from proceeds of property obtained *105 from her brother and further alleged: "* * * That the legal title to, possession and control of all of the aforesaid property was obtained by the defendant by fraud and undue influence exercised by her over and upon the intestate and the transfers, conveyances and delivery thereof to her were wholly without consideration and any title she has thereto is bare legal title and which she has held and is holding in trust for the intestate and his heirs." The prayer of said petition is as follows: "Wherefore plaintiffs pray that the various transfers and conveyances aforesaid by and through which the defendant holds or claims to hold title to the real and personal property aforesaid be set aside and held for naught; that the defendant be required to transfer to the plaintiffs all of the property, effects, and assets of the intestate held by her in trust; that the defendant Evelyn Irene Duro be restrained and enjoined from selling, assigning, conveying, transferring or in any manner disposing of the property of the intestate as aforesaid and that a writ of injunction issue accordingly against the defendant." In March 1945 plaintiffs in the aforesaid proceeding filed an amended and *106 substituted petition in which facts constituting the basis of the plaintiffs claim were set out in more detail and in the prayer of the petition there was included an express request for an accounting to the plaintiffs and for equitable relief. In this petition the plaintiffs alleged that all of the property which the defendant claimed to have purchased from proceeds of gifts which she had received from John Heber Duro, as well as the original gifts themselves, were held by the said Irene at the time of the death of the said John Heber Duro purely as a trustee for his estate. The petition contained the following paragraphs: "That the plaintiffs are informed and believe that the defendant claims all of the money and property herein and heretofore described either by virtue of alleged gifts or by the investment and re-investment of the proceeds and income from alleged gifts but the plaintiffs allege that none of the alleged gifts were ever consummated or completed in the decedent's lifetime; that the subject of such gifts and the income and proceeds therefrom at all times remained under the dominion and control of decedent; that there was no completed delivery or transfer in his lifetime; *107 that the decedent never intended such transfers or conveyances or purported transfers or conveyances as gifts; that decedent never intended to divest himself of dominion or control over the subject thereof or the income or proceeds therefrom; that all of such purported transfers or conveyances were merely colorable and for conveience only, were without consideration and were procured by the fraud, deceit and undue influence of the defendant. "That at the time of his death the decedent was the actual and equitable owner of all of the aforesaid money, property and securities and the title of the defendant, if any, is no more than bare legal title which she holds in trust for decedent and his heir." In September 1946 the trial judge filed his findings of fact and conclusion of law wherein he stated: "The plaintiffs, as administratrix of the Estate of John Heber Duro, and as sole heir at law, seek to establish their ownership of certain moneys, properties and securities which are standing in the name or are in the possession of the defendant. * * *
"* * * The defendant claims the property involved in this action either as: (1) Gifts from the decedent; (2) The exchange of the *108 subject matter of said gifts for other property; or (3) Purchase with the income and proceeds from said gifts. "Upon these issues, it is apparent that the defendant's claim to the property is wholly upon the validity of said gifts, for if she acquired no title through the alleged gifts, she could hardly improve her position by exchanging the subject matter thereof for other property or by purchase with the income or proceeds therefrom." The trial court found that the ownership of approximately half of the property involved was in the plaintiffs and the other half in the defendant and ordered the defendant to file an accounting relative to all of that property the title to which he decreed to be in the plaintiffs. Both plaintiffs and defendant appealed to the Supreme Court of Iowa from the decree of the District Court of Polk County, Iowa. On September 16, 1947, the Supreme Court reversed the District Court on defendant's appeal, except as to one minor item thereof, and affirmed the decree on plaintiff's appeal, whereby all of the property involved, except 250 shares of Michigan Public Service stock was decreed to be the property of the petitioner herein. In the Court's opinion *109 it is stated: "In plaintiff's 'Statement of the Case', in her brief she states: 'The plaintiffs allege and claim in substance that the decedent, John Heber Duro, transferred said property into the name of the defendant as a matter of convenience only, that said transfers were merely colorable without consideration and were induced and procured by fraud, deceit and undue influence of the defendant. * * *' From the foregoing we feel we are safe in assuming that plaintiff seeks recovery as to the property the decedent transferred to the defendant on the theory of a resulting or constructive trust." From April 22, 1943, through 1947, the year of the final decree, the petitioner herein received the following gross income: Year
Amount
April 22, 1943, to
December 31, 1943
$11,607.37
1944
12,793.20
1945
17,725.24
1946
14,920.58
1947
15,981.89
Total
$73,028.28
Petitioner engaged counsel to defend in the proceeding in which the petition was filed on April 22, 1943 (Shaw v. Addison, supra), and expended in that defense during the year 1944 $3,000 for attorney fees, $519.35 for court costs, and $50 for a bond. On her income tax return for 1944, in arriving *110 at net income, petitioner deducted the aforesaid attorney fees, court costs, and bond expense. The respondent disallowed the deductions and notified petitioner of a deficiency in 1944 income tax liability. The notice of deficiency gave the following explanation of the disallowance of the deductions: "Attorney fees, court costs, and bond expense in the total amount of $3,569.35 incurred in defense of court action are held not to be allowable deductions for income tax purposes." Opinion Petitioner contends that the deduction which she made for legal expenses in 1944 was an ordinary and necessary expense for the management, conservation or maintenance of property held for the production of income as provided for in section 23 (a) (2), I.R.C.[1] She argues that the suit filed against her by Louise Duro Shaw was primarily one for an accounting in which the question of title to the property involved was merely incidental. *111 Conversely, the Commissioner argues that the expenditure was all made in litigation primarily involving title to property of the taxpayer and that therefore the expenditure should be capitalized in the cost of the various items involved. He relies on Regulations 111, Section 29.24-2. [2] The Commissioner raises no question as to the reasonableness of the amount or the necessity of the expenditure. The petitioner relies primarily upon the cases of Hockschild v. Commissioner, 161 Fed. (2d) 817, and Rassenfoss v. Commissioner, 158 Fed. (2d) 764. In the Hochschild case the taxpayer was a director of the American Metal Company, Ltd. The taxpayer, together with a number of other stockholders and employees of the American Metal Company, organized a new corporation, The Climax Molybdenum Company, engaged in some of the same activities as American Metal Company. A stockholder in this latter company brought a suit against the taxpayer for the benefit of the American Metal Company *112 on the ground that the taxpayer had committed a breach of his fiduciary duties as director by the organization of a competing company. In this proceeding the plaintiff sought an accounting from Hochschild for all of the profits that he had made in connection with the Climax Corporation for the benefit of the American Metal Company and prayed that Hochschild's stock in the Climax Corporation be delivered over to the American Metal Company. Hochschild expended funds in defense of this suit which he successfully defended and deducted said funds from his income tax as an ordinary and necessary business expense. The Commissioner disallowed this deduction. The Court of Appeals, however, arrived at a different conclusion and in their opinion said: "We cannot agree that these fees which the petitioner paid in defense of a law suit were any the less deductible because his liability, if proved, might have destroyed his equitable title to the stock he held. His right to keep it was certainly in issue and in that sense his title to it was defended, to be sure, but the title as such was not perfected in any way by his expenditures for legal assistance. He thereby but fended off an abortive attack *113 upon the conduct of his business as a fiduciary and by freeing himself from liability to his corporation to account for such conduct put all of his property beyond the reach of his then accusers." In the Rassenfoss case one Campbell claimed to be a partner of the taxpayer in the Lincoln Bag Company. He brought a suit for partnership accounting of profits and of capital assets. The controversy was compromised and Campbell received a 1.75 per cent interest in the partnership earnings and assets, together with a cash payment of $14,000. Rassenfoss paid attorney fees for the conduct of the suit and the compromise, and deducted the same as ordinary and necessary expenses from his taxable income. In this case also the Court of Appeals disagreed with Commissioner, who disallowed the expenditures. In the Hochschild case it is apparent that the taxpayer was primarily defending himself against a charge of breach of his fiduciary duties as a trustee of a corporation. The prayer of the petition against him was for an accounting of all profits which he had received by virtue of such breach. The additional demand of the plaintiff in that case for the delivery of the stock in the Climax Company *114 to the American Metal Company was merely involved in the accounting proceeding as a part thereof and for the purpose of discontinuing the violation of the trust relationship of Hochschild as director of the American Metal Company. In the case at bar the basic offense with with Mrs. Addison was accused was the procurement of the original gifts through fraudulent means. The accounting then followed as a result of this fraudulent procurement and unjust enrichment. In the case at bar the offense started with the unlawful procurement of the property involved. In the Hochschild case the offense started with the violation of Hochschild's fiduciary duties as a director of the American Metal Company and his subsequent procurement of stock in the Climax Corporation was but a consequence of his initial tort. In the Rassenfoss case the Court evidently based its opinion on this same distinction because the decision says on page 767: "* * * Laying aside the legal question as to whether petitioner had any title to the partnership assets, it is perfectly plain, so we think, that the main and primary purpose of the suit which petitioner defended was for an accounting and any question of title *115 was merely incidental thereto. This is borne out by the compromise which was finally effected, by which Campbell was awarded almost an infinitesimal and only a limited interest in the partnership. * * *" The matter of the relative incidence of the claim in the Rassenfoss case for an accounting of profits and for a delivery of a portion of the assets is not too clear. In fact, the Court in that case recognized its own difficulty in the following words: "* * * The line of demarcation between an 'ordinary and necessary expense' as a deductible item and an expenditure incurred in defense of title to property and therefore not deductible is extremely narrow. In fact, in some of the cases it appears to have been drawn on an arbitrary [basis] rather than on a basis of reason or logic." Among the cases in which the line of demarcation would seem to be extremely narrow is Wm. A. Falls, 7 T.C. 66 (June 10, 1946). In that case the Young Corporation had filed a suit in equity against the taxpayer and others "for an accounting and to hold all defendants * * * as trustees ex maleficio." The taxpayer therein deducted from his taxable income his expenses in this litigation. The *116 Commissioner disallowed this deduction. In the original litigation the taxpayer had not been charged with actually taking from the plaintiff in that suit any property which the plaintiff had ever owned or controlled, unlike the situation in the case at bar. Falls had been merely charged with conspiring to violate his fiduciary as an officer of the Young Corporation to turn over to the Young Corporation patents and information which it was alleged Falls was under duty to turn over. Thus the prayer for an accounting would seem to be the basic object of the suit, as was the situation in the Hochschild case. However, this Court in the Falls case was evidently of the opinion that on the facts the prayer for an accounting for the royalties and the prayer for the transfer of the title to the patents were concurrent purposes of the litigation and of equal precedence therein and therefore the Court pro rated the legal expenditures between an ordinary and necessary business expense and an expenditure in defense of title. The Falls case was decided before the Hochschild and Rassenfoss cases but was not discussed in either of these decisions. Its facts distinguish it from the case at bar. In *117 the case at bar, from the wording of the Supreme Court's opinion in interpreting Mrs. Shaw's brief, it is clear that as to the original gifts Mrs. Shaw at that time was claiming that she was entitled thereto by virtue of Mrs. Addison's fraudulent procurement thereof and that Mrs. Addison held them only as a constructive trustee. The accounting for which Mrs. Shaw asked was merely an incident to Mrs. Addison's responsibility if, in fact, she were a constructive trustee. Furthermore, if we examine Mrs. Shaw's amended petition in the trial court we find that she claimed that not only the original gifts were procured by fraud but that the subsequent purchases of stock, while made in the name of Mrs. Addison, were actually made under the direction of John Heber Duro, that he never intended to deliver the stock to Mrs. Addison, that he did not deliver the stock to Mrs. Addison and that the money which went to the purchase of the stock was under his dominion and control at all times. At the institution of this suit Mrs. Shaw was claiming that Mrs. Addison was a constructive trustee of all the property which she owned at the death of John Heber Duro. Under such a claim it is obvious that *118 the question of the title to the property was the basic issue in Shaw v. Addison, and the accounting for the proceeds thereof merely incidental to the rights of the equitable owner of the property and the liabilities of the defrauding trustee. We find the facts in this case in close parallel to those in James C. Coughlin, 3 T.C. 420. In that case the brother of the taxpayer filed a petition for the perpetuation of the taxpayer's testimony alleging that he contemplated an action against the taxpayer on the ground that the taxpayer had been the confidential agent of the deceased mother of the plaintiff and the taxpayer, that prior to her death the mother entrusted stocks, bonds, an express business in which she was engaged and other property to the taxpayer to hold for her and that following the mother's death the taxpayer had refused to deliver the properties to the estate of the mother, but claimed them as his own. The Court granted the petition to perpetuate the testimony but the suit was later dismissed. The taxpayer deducted the fees which he paid his counsel from his taxable income. The Commissioner disallowed the expenditure and this Court sustained the disallowance. *119 In that opinion this Court said: "* * * It is evident from the facts alleged by the brother that the basis for the contemplated action lay in the thought that the mother had some interest in the petitioner's business and that as to such interest the petitioner was a mere agent. Fundamentally, then, the suit contemplated by the proceeding was a challenge to the petitioner's title to the properties. "It has long since been established, under section 23 (a), that expenditures in defense of title to property constitute a part of the cost of the property, and are not deductible as expenses. The regulations have consistently so held, and court decisions have sustained the regulations. Morgan Jones Estate, 43 B.T.A. 691; affd. (C.C.A., 5th Cir.), 127 Fed. (2d) 231. That case concerned the deductibility of expenses incurred in a suit to remove a cloud upon the title caused by a forged mineral deed. The Circuit Court of Appeals for the Fifth Circuit said, in part: 'It is immaterial that this petitioner was required to defend the title long after the property was first acquired, and at a time when he reasonably might have expected to incur no additional expense. *120 The nature of a suit to cancel a cloud upon title to real estate remains constant whether the action be prosecuted at the time, or long after, the acquisition of title. It is a contest involving the ownership of the property itself, and the title to property held for profit is a capital asset.'" See also Bowers v. Lumpkin, (C.C.A. 4, 1944) 140 Fed. (2d) 927, cert. denied 1944, 322 U.S. 755. It is therefore our conclusion that the deductions for legal expenses claimed by the petitioner herein were made by her in defense of her title to the property involved in the litigation and that the prayer for accounting involved in that litigation was secondary and incidental to the primary basis of the suit, and that the Commissioner's refusal to allow such deductions should be sustained. We are fully aware that a number of our citations above relate to paragraph (a) (1) of section 23, I.R.C., while the case at bar involves paragraph (a) (2) of section 23. However, this Court said in Hyman Y. Josephs, 8 T.C. 583: "* * * Any expense which would be deductible under section 23 (a) (1) if the taxpayer's activities amounted to the *121 carrying on of a trade or business is deductible under section 23 (a) (2) where the activities do not quite measure up to a trade or business but nevertheless were embarked upon by the taxpayer with the expectation of realizing income or profit. The corollary, of course, is that any expense, such as strictly personal, living or family expenses, which would not be deductible under section 23 (a) (1) is likewise not deductible under section 23(a)(2)." Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - * * *
(2) Non-trade or non-business expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.↩
2. SEC. 29.24-2. Capital expenditures. - * * * The cost of defending or perfecting title to property constitutes a part of the cost of the property and is not a deductible expense. * * *↩