MORGAN JONES ESTATE, PERCY JONES, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100686.    Promulgated February 19, 1941.

*J. Marvin Haynes, Esq.*, and *W. C. Magathan, Esq.*, for the petitioner.

*Marguerite Rawalt, Esq.*, for the respondent.

OPINION.

KERN: The decedent died leaving an estate of nearly $8,000,000 invested in a railroad, cotton seed oil mills, ranches and farms aggregating 70,000 acres, and interests in several partnerships engaged in selling land and leasing for oil wells. The multiplicity of his business activities and the methods by which his executor conducted them need not detain us, in view of the question before us, and on that account we do not set them forth in our findings or consider them here. We are concerned only with the narrow question of whether certain legal expenses incurred and paid in somewhat unusual circumstances are deductible. It is apparently not disputed that the expenses were necessary, if they could be considered as ordinary. However, if the expenses were, as respondent contends they were, a part of petitioner's cost of the tract involved and therefore in the nature of a capital expenditure, they are not deductible. In view of our conclusions on this impediment in the way of petitioner's success, we leave the other issues on one side and proceed at once to the question to be first determined.

The facts are peculiar. Decedent had acquired in 1923 fee simple title, free of all encumbrances, to a tract of some 62,000 acres in Texas. In December 1936 the daughter of the former owner first asserted a claim to the oil rights and lease money received by the petitioner from these lands, basing her claim on a pretended mineral deed from her father given in 1916. No such deed had been found in the previous title searches made by petitioner and others, and the local title-abstract companies had no record of it. But on examination of the records the purported deed was found, apparently

duly recorded. Further investigation showed that it was written by a typewriter in a font not used before 1927, and that the day of its purported recording was a Sunday and before that of certain authentic instruments previously recorded. The fraud, but not the agent or manner of its perpetration, was now obvious; and when petitioner as decedent's executor brought a suit in the United States District Court to remove the cloud on his title he was granted the prayed for relief.

Was this a capital expenditure? The Commissioner's regulations, set out in the margin, have been consistent in treating the cost of defending title as a capital expenditure.[1] The court in *Moynier* v. *Welch* (1938), 97 Fed. (2d) 471, and *Murphy Oil Co.* v. *Burnet* (1932), 55 Fed. (2d) 17, affirming 15 B. T. A. 1195, on this point; affirmed on other issues, 287 U. S. 299, held, as this Board has held, that such fees are a capital expenditure, to be added to the cost of the land.

In the *Murphy Oil Co.* case, *supra*, the taxpayer company had acquired by assignment an oil lease on certain land. It drilled an oil well, but it was "capped" later as a dry well. One Bacon, the secretary of the company, purchased the fee to the land and a month later conveyed the fee to the company. Thereafter the company produced oil in paying quantities. The original owner of the fee and vendor to Bacon sued to rescind the contract of sale on the ground of fraud—the lessee's false representation that the well first drilled was dry. A settlement was reached between the taxpayer company and Bacon's vendor by which the sale was confirmed and a substantial sum paid to the vendor. The court said, at page 26:

\* \* \* it does not alter the fact that the payment made to the vendor was substantially a deferred payment for the property. It was therefore essentially a capital investment and not allowable as a deduction from income. \* \* \*

And the court proceeded to quote with approval the opinion of this Board in disposing of the case:

To the extent that the expenses and payment were incurred and made in defense of the claim against the oil properties they were capital expenditures. We have repeatedly held that the cost of defending title, whether in the form of legal fees or compromise payments, is a capital expenditure representing additional cost of the property. *Lincoln L. McCandless*, 5 B. T. A. 1114; *Gopher Granite Co.*, 5 B. T. A. 1216; *Seletha O. Thompson*, 9 B. T. A. 1342; *Frederick McLean Bugher* [9 B. T. A. 1155] *supra; North American Oil Consoli-*

---

[1] Art. 24-2. [Regulations 94.] *Capital expenditures.*—\* \* \* The cost of defending or perfecting title to property constitutes a part of the cost of the property and is not deductible expense. The amount expended for architects' services is part of the cost of the building. Commissions paid in purchasing securities are a part of the cost price of such securities. Commissions paid in selling securities, when such commissions are not an ordinary and necessary business expense, are an offset against the selling price. Expenses of the administration of an estate, such as court costs, attorneys' fees, and executors' commissions, are chargeable against the corpus of the estate and are not allowable deductions. \* \* \*

[Cf. Regulations 45 (Revenue Act of 1918), art. 293.]

*dated,* 12 B. T. A. 68; *Phoenix Development Co.,* 13 B. T. A. 414. The decisions in *Kornhauser* v. *U. S.* [276 U. S. 145, 48 S. Ct. 219, 72 L. Ed. 505] *supra,* and the *Superheater Co.,* 12 B. T. A. 5, which are relied upon by the petitioner, are not in conflict with these cases. In the *Superheater* case the contemplated litigation grew out of an action of the board of directors, acting as such. The claim settled did not involve title. In the *Kornhauser* case the legal expenses were incurred to contest a claim against income received, differing fundamentally from the ordinary attack on title, even though the income in question consisted of shares of stock.

The facts and pertinent point in *Moynier's* case, *supra,* may be stated briefly in the court's language:

The plaintiff owned a ten acre lot in a subdivision called "Moynier Tract", Los Angeles County, California, upon which an oil company, having leased the land, drilled a well. Oil was secured in paying quantities. The only business in which the plaintiff was engaged was that of collecting his oil royalties and paying the taxes on the property he owned in said tract. All of the income upon which he paid taxes came from such royalties. Serious litigation arose over his right to such royalties. The producing oil company sued to have settled whether it should pay the provided royalties wholly to plaintiff or divide it with others, who owned other lots in the same tract. The others claimed that the lease contemplated a division of the royalties. Appellant expended the sum of $36,937.10 in attorney fees and litigation costs in relation thereto. * * *

\* \*   \*\*   \*   \*   \*   \*   \*

The authorities leave no doubt in the matter. Attorney fees and litigation costs in such circumstances are capital expenditures and are not deductible. Such expenditures were not "ordinary and necessary expenses paid * * * in carrying on any trade or business."

We think that the expenditure here was undoubtedly a capital expenditure, and therefore not deductible.

If the case of *Bliss* v. *Commissioner,* 57 Fed. (2d) 984, should be considered as contrary to the authorities above referred to, then we respectfully decline to follow it, but rather adhere to our own prior line of decisions which is supported by those authorities.

Holding, as we have, on this issue, it is unnecessary to consider the other grounds upon which respondent has based his determination.

Reviewed by the Board.

*Decision will be entered for respondent.*

---

Mellott, dissenting: The parties stipulated that "On May 31, 1923 * * * the petitioner's decedent acquired, in fee simple, free and clear of any liens or incumbrances whatsoever" the lands from which the rents and bonuses aggregating $63,864.75 were derived. Thirteen and a half years after the property was acquired, the daughter of a former owner asserted a claim to the rents and bonuses, basing it upon an alleged deed from her father to the oil and mineral

rights. The court found that the deed was fictitious, fraudulent, and void and that it had been recorded in the deed records without the knowledge of any clerk or deputy at a date later than 1927, years after the decedent had acquired title to the property. At no time was any question raised as to the surface title.

It is obvious that the claimant deliberately slandered decedent's title to the real estate in order to deprive his estate of the income which had been, or should be, derived from the conduct of its oil business. The suit was instituted, not as a sword of offense to add to the estate's capital, but as a shield of defense to protect it against one who would deprive it of its income. Under somewhat similar circumstances the Court of Appeals for the Fifth Circuit, in *Bliss* v. *Commissioner*, 57 Fed. (2d) 984, said: "It seems reasonable to treat amounts expended for services rendered in ejecting or excluding trespassers after ownership has been acquired as expenses incident to the ownership of property and the acquisition and enjoyment of income from it, rather than as additions to the capital investment in the property." This seems to be a sound rule and in accord with such cases as *Kornhauser* v. *United States*, 276 U. S. 145; *Welch* v. *Helvering*, 290 U. S. 111; *Deputy* v. *Dupont*, 308 U. S. 488, and others. I think the claimed deduction should be allowed.

Smith and Hill agree with this dissent.