Trust for Amy DuPuy McHenry, Emily W. Reed, Successor Trustee v. Commissioner.
Trust for Amy DuPuy McHenry v. Commissioner
Docket No. 10845.
United States Tax Court
1947 Tax Ct. Memo LEXIS 95; 6 T.C.M. (CCH) 1027; T.C.M. (RIA) 47249; August 29, 1947
Paul G. Rodewald, Esq., 1025 Union Tr. Bldg., Pittsburgh, Pa., and Donald L. McCaskey, Esq., for the petitioner. Homer F. Benson, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: Respondent determined a deficiency in income, tax for the calendar year 1942 in the amount of $2,704.30. The issue is the deductibility, in computing the trust's taxable net income, of certain legal fees and other expenses paid by the trustee, under order of Court, to fiduciaries and their counsel, who, on behalf of various trust beneficiaries, participated in litigation over the manner of distribution of a portion of the trust income. [The Facts] All of the facts have been stipulated, and are hereby found accordingly. So far *96 as material to this proceeding, they may be summarized as follows: A declaration of trust of June 15, 1917, was made by Herbert DuPuy, of which Amy DuPuy McHenry, his incompetent granddaughter, was life beneficiary. Upon her death, there were remainders to her children or to the lawful issue of deceased children; but in event that Amy died without lawful issue surviving, distribution was to be made to the settlor's children, or in the case of the death of any of them, then to the deceased's heirs and assigns. The tax return for the period involved, prepared on a calendar year-cash basis, was filed by the petitioner trust with the collector for the twenty-third district of Pennsylvania. The settlor acted as trustee until his death in 1930. By his will, as he was authorized by the trust, he appointed Emily W. Reed as his successor trustee, and she has, since his death, continued to act as such. She paid to Dr. Junius Hardin McHenry, the father of the life beneficiary, $20,000 a year until 1935, when upon his petition as the beneficiary's guardian, the Orphans' Court of Allegheny County, Pennsylvania, directed payment to him as guardian of an annual amount of $30,000. Dr. McHenry *97 was appointed conservator of Amy's estate by the Probate Court of the District of Norwalk, Connecticut, the state of the beneficiary's domicile. As the culmination of the litigation commenced by Dr. McHenry by his filing of exceptions to petitioner's accountings, as trustee, on May 25, 1938, he, as conservator of the estate of his daughter, together with other interested parties, signed an agreement in compromise of a claim which he had asserted against the trust for trust income accumulated during the minority of the life beneficiary, aggregating $497,811.43. The agreement, which was approved by the Orphans' Court provided, among other things, that the accumulated trust income should be added to corpus of the trust and that the trustee should be directed to distribute $40,000 annually out of the trust income to Dr. McHenry as conservator of the estate of his daughter. Fees of counsel and accountants for all parties were paid by petitioner pursuant to order of court. Sometime thereafter, in December, 1940, Dr. McHenry filed a petition and supplemental petition with the Orphans' Court for an order requiring petitioner to pay him, out of the available income of the trust, $30,000 *98 a year as an individual and $10,000 a year as conservator. These petitions were occasioned by surcharges, aggregating $17,400.30, imposed upon Dr. McHenry as such conservator by the Connecticut Probate Court, by disallowance of expenditures claimed by him to be for the indirect benefit of Amy. From this order Dr. McHenry took appeals to the Superior Court of Fairfield County, Connecticut. In connection with the petition filed by Dr. McHenry, the Orphans' Court made an order appointing Marcus W. Stoner guardian ad litem of Amy; Charles F. C. Arensberg (later excused and George B. Berger appointed in his stead) guardian ad litem for Rosetta Merrick, a minor, one of the named beneficiaries under the compromise agreement of May 25, 1938; and Ralph D. McKee guardian ad litem for other minor interests and trustee ad litem for interests in posse under the said agreement; awarding citations to all parties in interest under the compromise agreement; and directing all of the persons (twenty-one in number) to file answers to Dr. McHenry's petitions. Answers were filed shortly thereafter. And in July, 1941, the Orphans' Court overruled the preliminary objections raised by the answers and directed *99 all to file answers on the merits, which was done. Petitioner's answer on the merits averred, inter alia, that her right as trustee was merely to apply in her discretion all or any portion of the income arising from the securities held in trust to the education and maintenance of Amy, and that she had no discretion to apply any portion of the income to the use of Dr. McHenry as an individual. At a hearing held before the Orphans' Court on September 8, 1941, there was produced an agreement, generally referred to as the "family agreement," dated July 1, 1940, signed by nearly all of the parties in interest under the compromise agreement of 1938, but not by petitioner as trustee, nor by any trustee ad litem or guardian ad litem, who refused to sign such agreement. In effect, the family agreement provided for payments to Dr. McHenry in accordance with his petitions. Further hearings were held on January 26, 1942, after the filing of a second supplemental petition by Dr. McHenry. At this hearing John R. Cuneo, guardian ad litem for Amy, appointed by the Superior Court of Fairfield County, Connecticut, intervened and filed an answer to Dr. McHenry's petitions. On that date, the Orphans' *100 Court entered its decree modifying the payments to be made by petitioner under the agreement of compromise of 1938. By its decree the Orphans' Court ratified and approved the family agreement of July 1, 1940, but directed that petitioner pay out of the available annual net income of the trust $30,000 a year to Dr. McHenry, not as an individual, but as a special trustee accountable to the Orphans' Court, and $10,000 a year to him as conservator accountable to the Connecticut Probate Court, thereby recognizing petitioner's objections to Dr. McHenry's claim for payment as an individual. On February 13, 1942, there was a further hearing before the Orphans' Court en banc on the payment of counsel fees and expenses, at which hearing statements and affidavits in support of claims for counsel fees, accountants' fees and expenses were filed. Counsel for Dr. McHenry filed a memorandum on is behalf in support of the charging of all costs and fees against the principal of the trust, contending that by reason of the previous addition of accumulated income to corpus, the charging of the fees and costs against the fund held for remaindermen would constitute in reality a charge against income, not *101 principal. On March 19, 1942, the Orphans' Court entered its order approving the following fees and charges and directing that they be paid by petitioner: Smith, Buchanan & Ingersoll, counsel
for trustee, petitioner herein
$15,000.00
Kinley J. Tener and Marsh, Stoddard
& Day, counsel for Dr. McHenry
30,000.00
Pepper, Bodine, Stokes & Schoch,
special counsel for Dr. McHenry
15,000.00
Taylor & Lovejoy, counsel for John
R. Cuneo, guardian ad litem by ap-
pointment of the Superior Court of
Fairfield County, Connecticut
3,500.00
John R. Cuneo, guardian ad litem by
appointment of the Superior Court
of Fairfield County, Connecticut
1,500.00
Marcus W. Stoner, guardian ad litem
for Amy
10,000.00
Ralph D. McKee, trustee ad litem
2,000.00
George B. Berger, guardian ad litem
for Rosetta Merrick
1,000.00
Austin W. Scott, special counsel for
trustee
3,000.00
D. G. Sisterson & Company
7,500.00
$88,500.00 These amounts, and the further amount of $117.48 incurred as expense by petitioner's attorneys in connection with the litigation, were paid by petitioner in the year 1942 to the persons named in the order of court. The fees, amounting to $88,500, *102 were by the decree charged to principal, as requested by counsel for Dr. McHenry, except that $44,250 was directed to be reimbursed to corpus by Dr. McHenry from any balance remaining in his hands as special trustee or as conservator at the end of each calendar year. For purposes of this proceeding "petitioner does not press her claim to the deduction of the $44,250 contingently reimbursable by Dr. McHenry." In her return for the year 1942 petitioner claimed the amounts aggregating $88,617.48 as deductions, except to the extent that they were allocable to income wholly exempt from the income tax. In the notice of deficiency, respondent allowed a deduction in the amount of $20,077.32, being the part allocable to taxable income of the amounts aggregating $25,617.48 paid by petitioner to her attorneys and accountants. Respondent disallowed as deductions the following amounts paid by petitioner to the persons or firms named below, who acted in the capacities stated: Kinley J. Tener and Marsh, Stoddard
& Day, counsel for Dr. McHenry
$30,000.00
Pepper, Bodine, Stokes & Schoch,
special counsel for Dr. McHenry
15,000.00
John R. Cuneo, guardian ad litem for
Amy
1,500.00
Taylor & Lovejoy, counsel for John R.
Cuneo
3,500.00
Marcus W. Stoner, guardian ad litem
for Amy
10,000.00
Ralph D. McKee, trustee ad litem for
unborn interests under appointment
by the Orphans' Court of Allegheny
County, Pennsylvania
2,000.00
George B. Berger, guardian ad litem
for Rosetta Merrick, a minor re-
mainderman, under appointment by
the Orphans' Court of Allegheny
County, Pennsylvania
1,000.00
$63,000.00
*103 For the year 1942 the taxable income of the trust was 78.3735 percent of the total of taxable and nontaxable income. In the statement attached to the notice of deficiency, respondent determined that the trust income for the year involved was $41,480.70, and that the "Amount distributable to beneficiaries" was $31,150.39, leaving a balance of "Net income (taxable to fiduciary) as adjusted," $10,330.31, without regard to the personal exemption $100of. In the course of complicated and protracted litigation, petitioner, a trust for an incompetent, expended in fees of fiduciaries, attorneys and accountants, during the tax year a total of $88,617.48. Not all of this amount, however, is involved in the single present issue as to the deductibility of the payments under section 23(a)(2). Respondent has allowed a total of $25,617.48, representing expenses incurred for petitioner's own counsel and accountants. And petitioner concedes, for present purposes, a potentially reimbursable item of about $45,000. The remaining sum falls into two categories, $13,000 paid to guardians and trustees ad litem appointed by the Pennsylvania court in which the current litigation was pending, and $5,000 *104 in fiduciary and counsel fees for a guardian ad litem appointed in Connecticut, the state of the incompetent's domicile and that of her parent and guardian, Dr. McHenry. [Opinion] Respondent's allowance of the direct litigation expense incurred by petitioner, and the posture of the case established by its presentation, eliminate such questions as the bearing of the litigation on the ordinary and necessary character of the expenditures and their appropriateness as made "for the management, conservation, or maintenance of property held for the production of income." See Bingham v. Commissioner, 325 U.S. 365, Regulations 111, section 29.23(a)-15, as amended by T.D. 5331 (C.B. 1944, p. 98) and T.D. 5513 (C.B. 1946-1, p. 61). And as all of the items were paid by direction of the court in which the litigation arose, their necessity and propriety cannot well be questioned. See Blair v. Commissioner, 300 U.S. 5; Freuler v. Helvering, 291 U.S. 35. The controversy as to the disputed items revolves about the circumstance that though these were paid by petitioner and ordered by the court, the recipients were actually representatives *105 of interests different from, and in fact to some extent adverse to, petitioner. On this ground respondent insists in his brief "that the services of attorneys and accountants representing parties other than the trustee [petitioner] were owed to and performed for the benefit of such other parties * * *" and as a consequence, apparently, they did not contribute to the management, conservation or maintenance of property of the estate. Even this illiberal view, however, is not consistently maintained. At a subsequent stage of the same brief, in seeking to distinguish Kohnstamm v. Pedrick (D.C., S.D.N.Y.), 66 Fed. Supp. 410, respondent recognizes that "In that case the special guardians [whose fees were allowed there as deductions] regardless of their interest were appointed by the Court to advise it and the committee acting for the incompetent * * * whether they represented adverse interests is beside the point * * *." In that case, the incompetent's committee had sought the instruction of the New York Court as to its conduct in presenting an adverse claim to an intestate's share in the estate of the incompetent's testate deceased wife. Guardians for persons claiming *106 through the wife were appointed, and, notwithstanding that the conclusion of the Court was against the presentation of the claim, the fees awarded them were ordered paid out of the incompetent's estate, and their tax deduction was permitted by the District Court. The fees of the Pennsylvania special guardians and trustee presently in controversy cannot thus in our view, even on respondent's theory, be distinguished to any extent from those in the Kohnstamm case. These fiduciaries were appointed by the court considering the dispute to advise and protect it and their wards in an essentially similar manner to those in Kohnstamm v. Pedrick. And at least to a comparable extent the present petitioner benefited by their services. Certainly, the resistance to an adverse claim under these circumstances traditionally carries with it a likelihood of the imposition of just such expenses for fiduciaries ad litem as those awarded here. They are thus not only ordinary and necessary, but must be regarded as reasonably attributable to the litigation itself, and hence, if required to be borne by the estate, an expense of defending its property exactly as much as the estate's own counsel fees which *107 are admittedly deductible. See Bingham v. Commissioner, supra. A slight, technical, and to our mind, hairbreadth distinction is remotely possible as to the guardian appointed by the Connecticut court. As to him, if it makes any difference, it cannot be said that his designation was the action of the forum charged with hearing the law-suit. But as the deficiency in controversy includes to an infinitesimal extent, if at all, the deduction from the estate's net taxable income attributable to his participation, decision of this phase of the controversy will be withheld in the hope that the parties will be able, in the recomputation, to eliminate or otherwise agree on the disposition of this item. As to the deductible percentage of the $13,000 in fees paid to the Pennsylvania fiduciaries, the deficiency is disapproved. Decision will be entered under Rule 50.