## ALLEN v. SELIG.

### No. 14190.

United States Court of Appeals
Fifth Circuit.

Dec. 17, 1952.

Carolyn R. Just, Sp. Asst. to Atty. Gen., John P. Cowart, U. S. Atty., Macon, Ga., for appellant.

Herman Heyman, Atlanta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

What is in question here is the deductibility, under Sec. 23(a) (2) of the Internal Revenue Code,[1] of reasonable legal fees and incidental expenses incurred by the taxpayer in connection with a suit brought by her against the executors of her husband's estate to obtain a declaration that she was an equal owner with him of real estate, the legal title to which was in his name at his death.

The question comes up in this way. Appellee, claiming an overpayment for the year 1945, as a result of the disallowance of legal expenses incurred and paid in that year, brought this suit against the collector to recover it.

Her claim in general was: that the expenses were deductible under Sec. 23(a) (2) of the Internal Revenue Code as incurred and paid for the management, conservation, or maintenance of property held for the production of income. In particular it was: that, because of the facts set out in full detail in her complaint, that at the death of her husband the legal title to properties jointly owned by them both stood in his name, it was necessary to institute suit to obtain a declaration that this was so; that the fees and expenses which she sought to deduct were incurred in, and in connection with, that proceeding; and that,

1. "In computing net income there shall be allowed as deductions:

\* \* \* \* \*

"Non-trade or non-business expenses. In the case of an individual, all the ordinary and necessary expenses paid or in-

curred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income." 26 U.S.C.A. § 23.(a) (2).

488

though the expenditures were incurred in, and necessitated by, the management of the property held by her for income and were by the very terms of the invoked statute made deductible, they were, nevertheless, illegally disallowed.

The collector, in his answer, admitting the facts alleged by, but denying the conclusions of, the pleader, defended the disallowances and the deficiency assessment, and prayed judgment dismissing the complaint.

Tried to the court without a jury on evidence presenting no conflict or confusion as to the facts, there were full findings of fact and conclusions of law in the form of an opinion,[2] followed by a judgment for plaintiff, and the collector has appealed.

Here he is insisting: that the expenditures for which the deductions are claimed were incurred for the purpose of protecting or defending taxpayer's title to her undivided one-half interest in real estate; that they are, under the settled decisions of this[3] and other courts,[4] not deductible; and that the judgment must be reversed and rendered.

For the reasons following, we do not think so. Because, in his reported opinion, the district judge, has fully and correctly stated the undisputed facts, we will not burden this opinion by restating them. We will, instead, incorporate them by reference, stating only that particular fact or

facet which we believe requires restatement here.

Turning then to the opinion of the district judge, it will be seen at once that the judge does not take issue with the principle the collector invokes, that if the expenditures were a capital expense incurred in the acquisition or defense of title, they cannot be expensed and deducted, they must be capitalized. On the contrary, his position is that, on the undisputed facts as he has set them out, the expenditures were not capital outlays but were expenses incurred, within the very language of the statute, for the management and conservation of her property.

He found, upon the undisputed facts, that "title to the real estate was taken in the name of Simon Selig, but it was at all times understood that the plaintiff owned a one-half undivided interest in it. The income from the realty was reported one-half on the plaintiff's federal income tax return and one-half on his return. There is no dispute as to the genuineness of this arrangement."

So finding, he concluded, with eminent correctness,[5] that the equitable action, instituted by plaintiff to declare her ownership and compel the executors to execute a deed in accordance therewith, was not a suit to obtain or defend title, but was essentially conservatory in its nature, one to conserve income producing property which

2. D.C., 104 F.Supp. 390.

3. Jones Estate v. Comm., 43 B.T.A. 691, affirmed, 5 Cir., 127 F.2d 231; Louisiana Land & Exploration Co. v. Comm., 5 Cir., 161 F.2d 842.

4. Bowers v. Lumpkin, 4 Cir., 140 F.2d 927, 151 A.L.R. 1336; Lykes v. U. S., 343 U.S. 118, 72 S.Ct. 585; Helvering v. Stormfeltz, 8 Cir., 142 F.2d 982; Garrett v. Crenshaw, 4 Cir., 196 F.2d 185.

5. "The Superior Court action instituted by the Plaintiff did involve the transfer of legal title to her. This, however, was incidental as legal title would have ultimately passed to her by inheritance. Title, even though equitable, was and had been in the Plaintiff. The real purpose of her action was to prevent the laying waste of her property by assessment of wrongful estate taxes and administration

expenses against it. The action was initiated to enable her to resist the levying of wrongful charges against her income producing property. She would not have resisted the wrongful appropriation of her property by her husband's estate except for the fact it would have resulted in greatly diminishing her property. Mere perfection of a disputed title was not the Plaintiff's purpose. She brought the suit in order to conserve income producing property which she already owned.

"In addition to the charges which would have been levied against her property had she not restored to court action, her property, if treated as part of Simon Selig's estate, could have been sold by the executors under the powers given them in his will. It seems clear that legal action taken to forestall such depletions and possible sale of her property is conservatory in nature."

she already owned, and to free her management from unwarranted fetters.

We find ourselves in complete agreement with this view. Indeed, we think that to contend otherwise is to wholly misapprehend the facts and their conclusive effect. It is, with gaze and comprehension foreshortened by a too intense concentration upon the shibboleth of a suit to obtain or defend title, to shut one's eyes to the otherwise obvious difference between the principle which controls this case and that on which the collector relies, with the result that cases are relied on as authorities which are without real bearing here.

Even the most casual reading of the Lykes case will show that it was not at all a case of this kind. It did not even purport to be. As for the Garrett case, on which appellant so relies, accepting as we must, though this would not we think be law in Georgia, the statement in it that in Virginia the plaintiff in the suit had no title, legal or equitable, but only a right which required the judgment in the suit to convert it into title, we can see how different is the case here. As held by the district judge, Mrs. Selig, the taxpayer, had, and was recognized as having, a full equitable title to her one-half interest. Thus in Georgia, she acquired nothing by the suit except the declaration in the judgment that she was the equitable owner and a decree requiring the holder of the naked legal title to divest himself of, and invest her with, it.

We agree with the district judge that the case nearest to this one is not any of the cases cited by appellant, but the case he cites, Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670, and that while not precisely in point on its facts it is most persuasive, if not controlling, in principle. We agree, too, with the appellee that the view she and we take finds support in these cases she cites.[6]

The judgment was right. It is
Affirmed.

RUSSELL, Circuit Judge (dissenting).

With deference, I dissent. I think the trial Court and the majority here have misconceived the controlling facts and misapplied the controlling law. There is no proper basis here to support the holding that the legal expense sought to be deducted had been incurred in "the management, conservation, or maintenance of property held for the production of income." The Executor refused to recognize Mrs. Selig's claim unless, and until, she had established it. She had no evidence of title. She therefore proceeded by suit to establish title, and upon the trial twice unequivocally testified that such was her purpose. This purpose can not be said to be only an incident of the suit. Under the circumstances, it was the only means by which she could establish her title. If, and when, she might ultimately have received title by inheritance, such title would have been the husband's title, not her own original title, and of course a different title from that she sought to have established in the litigation in question. Furthermore, the devolution of the husband's title to her in the administration of his estate was subject to contingencies not at all existing if she established her own title.

Garrett v. Crenshaw, 4 Cir., 196 F.2d 185, rules the precise question here involved and I do not understand it to declare any rule in Virginia different from that which obtains in such cases in Georgia. That decision shows why the similar legal expense in the present case was not properly deductible.

6. Rassenfoss v. Commissioner, 7 Cir., 158 F.2d 764; Kohnstamm v. Pedrick, Collector, D.C., 66 F.Supp. 410; Orien H. Anderson v. Commissioner, 8 T.C.M., p. 740; Amy DuPuy McHenry, et al. v. Commissioner, 6 T.C.M. 1027.