Estate of Bond Sneed McCauley, Deceased, Duane Bolze, Special Administrator, and C. F. McCauley v. Commissioner.
Estate of McCauley v. Commissioner
Docket No. 4089-63.
United States Tax Court
T.C. Memo 1965-139; 1965 Tax Ct. Memo LEXIS 190; 24 T.C.M. (CCH) 742; T.C.M. (RIA) 65139; May 24, 1965
Clarence E. Kendall, Bank of the Southwest Bldg., Houston, Tex., for the petitioners. Martin J. Nash, for the respondent. FAY
Memorandum Opinion FAY, Judge: Respondent determined a deficiency in the petitioners' income tax for *191 the taxable year 1959 in the amount of $7,266.81. The parties have disposed of certain issues raised in the pleadings. The remaining issue for decision is whether an expenditure of $6,500 for legal fees paid by Bond Sneed Denson Trust in 1959 to a guardian ad litem and attributable to Bond Sneed McCauley by virtue of sections 671 through 676 of the Internal Revenue Code of 1954, constitutes a capital expenditure or an expense incurred for the conservation or maintenance of property held for the production of income. The facts have been stipulated and are found accordingly. Petitioner Duane Bolze, whose address is Arizona Bank Building, Phoenix, Arizona, is the duly appointed, qualified, and acting Special Administrator of the Estate of Bond Sneed McCauley, Deceased. Petitioner C. F. McCauley (hereinafter referred to as McCauley) resides at 609 Francis, Key West, Florida. McCauley and Bond Sneed McCauley, deceased (hereinafter sometimes referred to as Bond), were married on October 28, 1957, and were husband and wife during the period herein involved. Bond died on October 27, 1959. C. F. McCauley and Bond Sneed McCauley (deceased) filed a Federal joint *192 income tax return for the taxable year 1959 with the district director of internal revenue, Austin, Texas. Bond, whose maiden name was Bond Sneed, was first married to Arthur Talk, by whom she had a son (Arthur Talk, Jr.) and whom she divorced. Thereafter, on December 25, 1947, she married Vernon Denson, by whom she had a daughter (Lillian Denson). On March 3, 1956, Bond filed suit for divorce against Denson. On February 20, 1957, Bond, joined by Denson, conveyed to L. Keith Simmer, George A. Hill, and the Bank of the Southwest National Association, Houston, Texas, as trustees of the Bond Sneed Denson Trust, all of her separate property which was income-producing property. The trust provided, inter alia, as follows: (1) That Bond Sneed McCauley, the grantor, is to receive (A) $2,000 a month, (B) an amount equal to the aggregate income taxes assessed, and (C) the right of occupancy of a suitable home purchased by the trust. (2) The trustees may at their discretion (A) pay the remaining income to a class consisting of the grantor and her descendants or (B) accumulate the income and add it to the corpus. The trustees may at their uncontrolled discretion distribute any part of corpus *193 to this class in order to permit the beneficiary thereof to meet an unusual expense or emergency, or supply funds for medical care or for the education of any beneficiary or child thereof, or for any other purpose deemed advisable to the trustees. (3) Upon the death of the grantor, the trust corpus is to be divided into as many equal shares as there are surviving children and deceased children leaving issue then living. The trust corpus is to be paid over except, if any beneficiary is under the age of 30, title is to vest but payment to be withheld until such time as the beneficiary reaches the age of 30. If no issue of the grantor survive her, then upon her death the trustees are to deliver and pay over the remaining trust property to Bluebird Foundation. On February 14, 1957, Bond and Denson entered into a property settlement agreement in contemplation of their divorce, and such agreement was incorporated in the divorce decree. Paragraph VI of the property settlement agreement provided that a trust consisting of all Bond's separate property had been created by separate instrument and no further agreement concerning her separate property need be made. At the time of the execution *194 of the trust, Bond's two children, Arthur Talk, Jr., and Lillian Denson (hereinafter sometimes referred to as the children) were 14 and 7 years old, respectively. On March 4, 1957, Bond was granted a divorce from Denson. On September 25, 1957, Bond filed suit in the 125th Judicial District Court of Harris County, Texas, against the trustees of the trust. Her action was styled "Mrs. Bond Sneed Denson v. L. Keith Simmer, et al," Cause No. 491,719, and was for the purpose of revoking the trust. In her original petition, Bond also requested that the court enter an order requiring the trustees to pay her out of trust property $3,000 per month pending final determination of the lawsuit. The trustees, represented by their attorneys, Fullbright, Crooker, Freeman, Bates, and Jaworski, filed on October 8, 1957, a plea in abatement to plaintiff's original petition, alleging, inter alia, a lack of necessary parties named in that petition, including the children. The plea in abatement was sustained by the District Court and Bond (plaintiff) was required to join the other necessary parties, including Arthur Talk, Jr., and Lillian Denson, in order to maintain her action. Thereafter, on October 23, 1957, Bond *195 (plaintiff) filed an amended petition in which the additional necessary parties were named as defendants. By reason of the joinder of Bond's two minor children as defendants, it was necessary for the court to appoint a guardian ad litem to represent them in the litigation. By court order dated November 4, 1957, George O'Brien John was appointed guardian ad litem. On November 15, 1957, the trustees of the trust filed a crossaction against Bond and her husband, McCauley, for the purpose of having the trust declared to be a valid, subsisting, and enforceable trust. Prior to May 21, 1959, all parties had pleaded to the merits of the litigation and Bond (plaintiff) and the defendants had filed motions for summary judgment. On May 21, 1959, the court entered its judgment granting defendants' motion for summary judgment. The judgment of the lower court was sustained on appeal in McCauley v. Simmer, 336 S.W. 2d 872 (Texas 1960). As part of the order granting defendants' motion for summary judgment, the court awarded guardian ad litem fees of $6,500 to George O'Brien John, which amount was paid by the trust on May 27, 1959. It is stipulated between the parties that (1) *196 Bond Sneed McCauley was the owner of the trust in accordance with the provisions of sections 672 through 676 of the Internal Revenue Code of 1954 and (2) pursuant to section 671, the $6,500 guardian ad litem fee is attributable to Bond. Petitioners claimed as a deduction in their Federal income tax return for the year 1959 the $6,500 paid to the guardian ad litem for legal expenses. Respondent disallowed this deduction on the grounds that legal fees were a capital expenditure. The remaining issue for decision is whether an expenditure of $6,500 for legal fees paid by the trust in 1959 to the guardian ad litem constitutes a capital expenditure or an expense incurred for the management or conservation of property held for the production of income. [1]
*197 Respondent contends that the legal fees paid to the guardian ad litem represent an expenditure of defending title and accordingly represent a capital expenditure not deductible under section 212. Petitioners do not dispute that expenditures of defending title are capital outlays to be added to the cost of property. However, petitioners dispute application of the "defense of title" rule to the instant case. The line between capital expenditures and current expenses arising from litigation involving title is not always drawn with precision. However, our task is to classify payment of the legal fees actually in issue in one category or the other. Each of the cases in this field is in a sense sui generis as each is decided upon its own facts. There are several basic principles underlying any determination of the character of the expenses involved. The following are some of the principles to be considered: (1) the subjective motives of the taxpayer in defending such litigation or those of the party who instituted the suit; (2) the issues involved; (3) the nature and objectives of the suit in which the expenditures were made; (4) the defenses asserted; and (5) the purposes for which *198 the claimed deductions were expended. Morgan's Estate v. Commissioner, 332 F. 2d 144 (C.A. 5, 1964), affirming on this issue 37 T.C. 31 (1961). Although at all times Bond had an undisputed pre-existing equitable interest in the trust, such equitable interest only entitled her to a fixed annual income for life and an amount equal to the aggregate annual income taxes assessed. She did not have an undisputed right to trust income over and above her annual stipend. Such excess, if any, could be applied to various ends in the absolute and uncontrolled discretion of the trustees. Bond did not possess an undisputed equitable interest in any portion of the corpus except to the extent the trust's income was insufficient to meet her annual stipend. Nor did she have an undisputed right of any kind to control future disposition of the trust income or corpus. Bond's suit to revoke the trust was an indirect attack upon the children's interests; and, the $6,500 fee in issue compensated the guardian ad litem for his services in protecting the children's interests in the trust against such attack. As Bond attempted to acquire full legal title to the trust property, the *199 trustees and the beneficiaries sought to sustain the trust and defend their interests therein, respectively. The guardian ad litem fees were paid by the trust as a result of the judgment issued in the State court litigation. On the basis of these facts, we believe (1) that title was a major issue in the underlying State court litigation and (2) that the expenses in question were incurred by the trust primarily in defense of title. Manufacturers Hanover Trust Co. v. United States, 312 F. 2d 785 (Ct. Cl., 1963). Petitioners argue that in cases where a taxpayer has a pre-existing equitable interest in property and seeks to abrogate or annul a burden on his interest through legal action, it is established that title, as such, is incidental. Accordingly, they contend, the legal expenses so incurred are held to be deductible as expenses for the management, conservation, and maintenance of incomeproducing property. This argument is an erroneous simplification of the holding in the cases relied upon by petitioners. The fact a petitioner has a pre-existing equitable interest is not determinative in and of itself. Arturo H. P. Ramos, 38 T.C. 820 (1962). In *200 Allen v. Selig, 200 F. 2d 487 (C.A. 5, 1952), upon which petitioners rely, the underlying litigation involved a suit brought by the taxpayer to have herself declared legal owner of one-half interest in property, legal title of which was held in the name of her deceased husband. In that case, the taxpayer's pre-existing equitable interest in the property was not restricted to a limited life estate as in the instant proceeding. In effect, the taxpayer, in Allen v. Selig, supra, was seeking to remove the thin layer of trust administration which separated her equitable interest in the property from full legal title thereto. In the case at bar, Bond sought not only to remove trust administration but also to invalidate the children's interests in the trust. The facts in Ruoff v. Commissioner, 277 F. 2d 222 (C.A. 3, 1960), reversing 30 T.C. 204 (1958), also are distinguishable from those presented in the instant case. There, the Court of Appeals subscribed to the fact that the rights of the claimant did not revolve around title but whether or not taxpayer was an enemy national within the meaning of the Trading with the Enemy Act. In both *201 Ruoff and Allen v. Selig, the Courts of Appeals did not determine that the existence of an equitable interest automatically made the suit one in which title was incidental. We believe that the other cases cited by petitioners are similarly distinguishable. Although we have determined that defense of title was a major issue in the State court litigation, we would be remiss to ignore the fact that the guardian ad litem also was charged with defense of the children's income interest, if any. However, their income interest was not fixed in percentage or in amount but, rather, was wholly dependent upon the absolute and uncontrolled discretion of the trustees. Furthermore, the record does not provide us with any indication of the total income produced by the trust over and above the annual amounts required to be paid to Bond. Thus, we lack any reasonable means of determining to what extent, if any, a portion of the guardian ad litem fees related to defense of the children's income interest. Therefore, we hold that the entire $6,500 fee paid to the guardian ad litem was for the purpose of defending title and, consequently, is not an expense incurred for the conservation or maintenance *202 of property held for the production of income. On brief, petitioners argue, in the alternative, for the first time that the $6,500 fee paid to the guardian ad litem constitutes a loss deductible under section 165. [2] Even if this issue were properly raised, petitioners have not shown that a loss with respect to the $6,500 fee was sustained during the taxable year 1959. Therefore, we hold for the respondent. Decision will be entered under Rule 50. Footnotes
1. There is no controversy as to the applicable taxing statutes and regulations. Section 212, I.R.S. 1954, provides that there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production * * * of income; [or] (2) for the management, conservation, or maintenance of property held for the production of income; * * *
Subsections (i) and (k) of sec. 1.212-1, Income Tax Regs., provide, in pertinent part, as follows: (i) Reasonable amounts paid or incurred by the fiduciary of an estate or trust on account of administration expenses, including fiduciaries' fees and expenses of litigation, which are ordinary and necessary in connection with the performance of the duties of administration are deductible under section 212, notwithstanding that the estate or trust is not engaged in a trade or business, except to the extent that such expenses are allocable to the production or collection of tax-exempt income. * * *
(k) Expenses paid or incurred in defending or perfecting title to property, * * * constitute a part of the cost of the property and are not deductible expenses. * * *↩
2. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * *
(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; * * *↩