ROSE KELLNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kellner v. Commissioner
Docket Nos. 14673-79, 21572-80.
United States Tax Court
T.C. Memo 1982-729; 1982 Tax Ct. Memo LEXIS 21; 45 T.C.M. (CCH) 356; T.C.M. (RIA) 82729; December 20, 1982. Robert Greenberg, for the petitioner. Paulette Segal, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: In these consolidated cases respondent determined deficiencies in petitioner's Federal income taxes for the years 1976 and 1977 in *22 the amounts of $7,773.05 and $13,581.50, respectively. Concessions have been made by the respondent. At issue is whether the petitioner is entitled to deduct under section 212(1) or (2) [1] attorney and accountant fees in (a) her successful suit against her deceased husband's estate to establish ownership to a $5,000 bearer bond and to her residence and (b) her unsuccessful suit against the estate to acquire title to $300,000 of City of Philadelphia bearer bonds and to an undivided one-half interest in all of the other assets of the estate. All of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The pertinent facts are set forth below. Rose Kellner (petitioner) was a resident of Dunedin and East Hallandale, Florida, respectively, when she filed her petitioners in Docket Nos. 14673-79 and 21572-80. Petitioner timely filed her Federal income tax return for 1976 with the Internal Revenue Service at Atlanta, Georgia, and she filed her 1977 *23 return with the Internal Revenue Service at Holtsville, New York. Petitioner is the widow of samuel Kellner. They were married in 1923. Samuel died on December 30, 1975. From 1923 until Samuel's death the petitioner was engaged in business with her husband. At first they owned a tire dealership in Hicksville, New York, as Samuel Kellner, Inc. Later the name was changed to Tire Craft, Inc. Petitioner was an officer of the corporation, kept its books, and was actively engaged in its management. All of the stock of both Samuel Kellner, Inc. and Tire Craft, Inc. was in the sole name of Samuel. Sometime in 1958 the petitioner and Samuel entered into the real estate business in Florida. They formed Rolling Oaks Corporation, which built homes throughout Florida, known as Beverly Hills Homes. Petitioner served as an officer of the company, kept its books, and was actively engaged in its management. All of the stock of the Rolling Oaks Corporation was in the sole name of Samuel. Samuel used the profits from these endeavors and invested them in various parcels of realty, primarily in New York and Florida. All of the investments were bought in his name only, although it was *24 petitioner's belief that she owned a one-half undivided interest in the realty. When Samuel died his gross estate was valued at $7,628,344.91. This amount included, among other things, the stock of Rolling Oaks Corporation valued at 4,300,000; the stock of S-K Building Co. valued at $76,000; City of Philadelphia bearer bonds valued at $300,000; and a bearer bond valued at $5,000. Samuel's will bequeathed to petitioner one-third of his gross estate, provided for charitable bequests and established a trust for three children born to him and petitioner, and provided an additional share for another son. In 1976 the petitioner brought an action in the Circuit Court for Pinellas County, Florida, against the Estate of Samuel Kellner in which she asserted the following: 1. There existed a $5,000 bearer bond in the decedent's safe deposit box in his sole name at a bank in Long Island, New York. Petitioner claimed that such bond was purchased with her funds and was kept in her husband's safe deposit box for safety and convenience purposes. 2. Petitioner claimed $300,000 of bearer bonds located in a safe deposit box held in Samuel's sole name at the Bank of Inverness in Florida. *25 3. Petitioner claimed one-half of all probate assets wherever situated as being non-probate assets. Her theory was based on either a resulting or constructive trust doctrine because she had worked side by side with her husband for 52 years. 4. Petitioner claimed all the stock in a Florida corporation, S-K Building Co., which had as its sole asset a home and furnishings occupied by petitioner and Samuel during their visits to Florida and which later became their residence there. A decree by the Circuit Court of Pinellas County confirming petitioner's claim to the $5,000 bearer bond was entered on July 14, 1977, and a conveyance to her was ordered. The Court denied her claims to both the $300,000 in City of Philadelphia bearer bonds and the conveyance of the undivided one-half interest in the estate's other assets. The Court requested additional findings of fact with respect to the stock of S-K Building Co. which owned the home and furnishings occupied by petitioner and Samuel. Subsequently, the Circuit Court found that the stock of S-K Building Co. was owned by Samuel and petitioner as tenants by the entirety, and it ordered the estate to convey the stock to petitioner. *26 S-K Building Co. quitclaimed the property to petitioner on January 13, 1981. If petitioner had been totally successful, the property interest she would have received pursuant to a constructive or resulting trust would have passed to her by operation of law, and would not have been subject to estate taxes and administrative fees and costs. Petitioner appealed the claims which were denied by the Circuit Court of Pinelles County to the District Court of Appeals for the Second District of Florida. The appeal was denied. She then applied for a writ of certiorari to the Supreme Court of Florida with respect to such claims. The writ of certiorari was denied on February 28, 1979. In order to litigate the issues in the Florida state courts the petitioner employed various attorneys and accountants. She paid them $32,626 in 1976 and $42,328 in 1977 for legal and accounting fees. She claimed deductions for "Professional Fees" in such amounts on her Federal income tax returns for those years. Respondent disallowed them. Petitioner contends that she is entitled to deduct the claimed legal and accounting expenses pursuant to section 212(1) or (2) [2] because she was attempting by the *27 litigation to either protect her right to receive income from the various properties or to conserve property which she thought was rightfully hers. To the contrary, respondent contends that the fees were not ordinary and necessary expenses paid for the production of income or the conservation of property, but were expenses paid by petitioner in her attempt to perfect title to certain property or to acquire title to other property. Thus, he argues that the "origin of the claim" was a dispute as to title so that the expenses were capital in nature rather than deductible. He also argues that the expenses became a part of the cost of the property title to which petitioner was successful in perfecting, but were nondeductible expenses relative to the property title to which she was unsuccessful in acquiring. See sections 212 and 263; section 1.212-1(k), Income Tax Regs.[3] In addition, section 263 states the general principle that no deduction is allowable for a capital expenditure and section 1.263(a)-2(c), Income Tax Regs., provides that capital expenditures include the cost of defending or perfecting title to property. *28 We agree with the respondent. Not all litigation expenses, including fees paid to attorneys and accountants, are deductible. In deciding how such expenses should be treated the Supreme Court in United States v. Gilmore,372 U.S. 39 (1963), declared that it is necessary to determine the origin and character of the claim. It stated at page 49: the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was "business" or "personal" and hence whether it is deductible or not * * * In Gilmore the taxpayer tried to deduct that part of his attorney's fees paid in his divorce action which he attributed to his attorney's efforts to keep from his wife certain income-producing property. The taxpayer had argued that this was an expense under section 212(2), but the Supreme Court found that the origin of the claim was the divorce which is a personal matter. Therefore, the fees were held to be nondeductible. The Supreme Court expanded the "origin of the claim" test to the capital expense area in Woodward v. Commissioner,397 U.S. 572 (1970), *29 and United States v. Hilton Hotels Corp.,397 U.S. 580 (1970), companion cases in which it upheld the disallowance of deductions for appraisal expenses incurred in litigation to determine the value of stock. The Supreme Court found that the claim giving rise to the expense in each case originated in the acquisition of stock by minority shareholders and therefore had to be capitalized. We must apply the clear principles of these Supreme Court decisions in deciding this case. Although the property (except for the residence) involved in the Florida proceedings was either income-producing or investment property, the litigation was an attempt to establish title to the property rather than to protect or determine the income from it. No evidence was presented to show that the estate ever questioned the fact that petitioner would be entitled to the income from any of the property she might succeed in acquiring. Rather, the stipulated facts indicate that the origin of the claim was an attempt to establish or perfect title to property in which petitioner believed she had some equitable interest. The thrust of the major portion of the litigation was to have the Circuit Court *30 place a constructive or resulting trust over the property in order to have legal title conveyed to her. [4] The character of the claim was a dispute over title and any income she would have derived if she had been successful in her suit did not make this expense deductible under section 212. In Brown v. Commissioner,215 F.2d 697 (5th Cir. 1954), affg. on this issue 19 T.C. 87 (1952), the Court of Appeals stated that when property is held for the production of income, any expenditure which relates to the perfection or defense of title can, in one sense, be said to be an expenditure for the conservation of the property. The Court commented, however, that it seems equally sound to say that any such expenditure is more properly an element in the cost of acquiring or preserving the legal right to the income produced by the property, and is therefore a capital expenditure. See Hahn v. Commissioner,T.C. Memo. 1976-113. Without such protection of title there would be no income. See Garrett v. Crenshaw,196 F.2d 185 (4th Cir. 1952). *31 Since the litigation did allow petitioner to perfect her title to the residence and the $5,000 bearer bond, the legal and accounting fees attributable to that portion of the suit, although not deductible, may be capitalized by adding the allocable amounts to her bases in both the residence and the bond. As to the far greater balance of the fees, if petitioner had been successful in having the Circuit Court place a constructive or resulting trust on one-half of the property in her husband's estate and having herself declared the owner of the $300,000 in bearer bonds, she would have been able to capitalize the legal and accounting fees attributable to that portion of the litigation. However, since she was not successful, she does not have any property against which to capitalize these expenses. If the petitioner could not deduct the expenses if she had won, it follows that she cannot deduct them because she lost and has no assets against which to capitalize them. Indeed, in Reed v. Commissioner,55 T.C. 32 (1970), a case similar to the instant case, the taxpayer unsuccessfully attempted to have this Court place a constructive trust on a partnership interest which *32 she believed she owned. She then deducted the litigation expenses. Applying the "origin of the claim" test to disallow the deduction, we stated at page 40: Not only was "the origin of the claim litigated * * * in the process of acquisition itself," but the litigation was a direct attempt to acquire. * * * It is axiomatic that costs of acquisition are not deductible. The mere fact that the petitioners were unsuccessful in their attempt does not render the expenditure a deductible expense. * * * [Emphasis added.] With respect to petitioner's argument that she should be allowed a deduction under section 212(2), we think she does not even meet the prerequisite for complying with that section because she never "held" the property. The Florida court determined that, except for the residence and the $5,000 bearer bond, she did not own any property. The fact that she happened to receive some of the same property by inheritance is not the same as owning the property from the time it was originally purchased by her husband. Petitioner relies on three cases, Selig v. Allen,104 F. Supp. 390 (M.D. Ga.), affd. 200 F.2d 487 (5th Cir. 1952), and *33 the companion cases of Day v. United States, 57-1 USTC par. 9270 (D. Ariz. 1956), and Lytton-Smith v. United States, 57-1 USTC par. 9272 (D. Ariz. 1956), for the proposition that, based on the "primary purpose" test, she should be allowed a deduction under section 212(2). The "primary purpose" test is no longer viable. United States v. Gilmore,372 U.S. 39 (1963). Therefore, the cases relied on are not controlling. We also reject petitioner's alternative argument under section 212(1). The two memorandum opinions cited by her are clearly distinguishable on their facts. In each case the question of ownership was not an issue, but rather whether the taxpayer paid his own or another's legal obligation. Petitioner here was not attempting to have her investments protected or changed in order to conserve her property. She merely wanted to receive legal title to what she believed she already owned. One must own property before he or she can attempt to maintain or conserve its income. Hahn v. Commissioner,supra.
Accordingly, we hold that the claimed legal and accounting expenses are not deductible. However, *34 to reflect the concessions made by the respondent, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years here involved, unless otherwise indicated.↩
2. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; or ↩
3. Section 1.212-1(k), Income Tax Regs., provides as follows: (k) Expenses paid or incurred in defending or perfecting title to property, in recovering property (other than investment property and amounts of income which, if and when recovered, must be included in gross income), or in developing or improving property, constitute a part of the cost of the property and are not deductible expenses. Attorneys' fees paid in a suit to quiet title to lands are not deductible; but if the suit is also to collect accrued rents thereon, that portion of such fees is deductible which is properly allocable to the services rendered in collecting such rents. Expenses paid or incurred in protecting or asserting one's right to property of a decedent as heir or legatee, or as beneficiary under a testamentary trust, are not deductible.↩
4. Although petitioner did not ask that a constructive or resulting trust be placed on the residence or the bonds, the analysis of the origin of the claim test for those items of property is the same since the litigation was an attempt to establish title.↩