ROBERT L. WILSON AND EVELYN M. WILSON (NOW EVELYN M. SMITH) FORMERLY HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89403. Filed November 17, 1961.

*Amos E. Jackson, Esq.*, for the petitioners.
*James D. Ritter, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The Commissioner determined deficiencies in income tax of petitioners in the amounts of $2,088.22 for 1956 and $4,655.96 for 1957. Petitioners, then husband and wife residing in Palm Beach, Florida, filed joint income tax returns for the years in controversy with the district director of internal revenue at Jacksonville. They have since been divorced and the wife is now known as Evelyn M. Smith, her name during a prior marriage. The sole issue for decision relates to the deductibility of attorney's fees paid by her in connection with establishing her right to dower growing out of that prior marriage. The facts have been largely stipulated, but a small amount of additional evidence was received, and any facts based on that evidence necessary to the consideration of the case will appear hereinafter.

Maynard L. Smith, the prior husband, died testate on May 13, 1955. His will named Evelyn and his two sons by a prior marriage as executors; it devised and bequeathed a one-third interest in his residuary estate to her and a one-sixth interest to each of the two sons as well as a one-sixth interest to or for the benefit of each of two daughters. After consideration Evelyn determined to establish her right to dower in the decedent's estate in lieu of her rights under the will, and for this purpose engaged the services of an attorney, Milton M. Ferrell.

Apart from the comparatively simple matter of claiming dower in general, which did not appear to be in dispute, there was a controversy between Evelyn and the other beneficiaries in respect of the most valuable item of property owned by the decedent, namely, securities held for him by a brokerage firm in a margin account having a value of $2,580,451.01 at the date of death, but subject to a debit balance on the same day in a total amount of $764,420.78 in favor of the brokerage firm. Evelyn contended that her dower interest covered one-third of the total value of the securities undiminished by any part of the obligation to the brokerage firm, while the other beneficiaries contended in substance that her dower interest was limited in this respect to one-third of the net value of the brokerage account.

Evelyn entered into an agreement with Ferrell whereby she agreed to pay him $5,000 for representing her in all matters of dower, apart from the controversy relating to the brokerage account. As to the latter, Evelyn was to pay an additional $40,000 (later reduced to $30,000) if Ferrell were successful in supporting her position respecting the debit balance against the brokerage account and was to pay him nothing if he were unsuccessful.

On February 1, 1956, Evelyn filed in County Judge's Court, Palm Beach, Florida (referred to as the Probate Court), a document entitled "Election to Take Dower." She stated in that document that she was dissatisfied with the portion of the estate to which she was entitled under the will and that she elected to take dower as provided by law. On June 1, 1956, Evelyn filed a document in the Probate Court entitled "Petition of Widow for Assignment of Dower," stating that she had previously elected to take dower and alleging that the property in which she claimed dower "is set forth in the inventory heretofore filed in this cause * * *." On June 11, 1956, the Probate Court entered a "Judgment of Dower" reading in part as follows:

IT IS ORDERED AND ADJUDGED that said widow is entitled to dower in said estate; that dower is assigned to her; that this court will hereafter set off the widow's dower, after a hearing at which all parties shall have the right to be heard, and include in said widow's dower all mesne profits, if any.

232

The matter of the debit balance against the brokerage account was not settled by that order. Thereafter, in October 1956, Evelyn filed a petition with the Probate Court asking for an order allotting dower in the securities held by the brokerage firm without any offset on account of the debit balance.

The amount of the debit balance had meanwhile been sharply reduced. The decedent's contract with the brokerage firm gave it wide latitude in applying assets of the account against any indebtedness, and as early as January 20, 1956, the principal amount of the debt appears to have been reduced to $223,742.37. However, the controversy between Evelyn and the other beneficiaries related to whether the entire amount of the indebtedness as of the date of death was to be treated as a charge against the securities for the purpose of computing her dower interest as of that time.

A hearing was had in the Probate Court on Evelyn's petition, and the court on October 26, 1956, issued the following order:

the Court having heard argument of counsel, and being otherwise informed in the premises, it is

CONSIDERED, ORDERED AND ADJUDGED that the widow be and she is hereby allotted a dower interest in the total value of said stocks held by said brokerage firm valued at $2,580,451.01, without any offset for the amount owed said brokerage firm as a debit balance in the sum of $764,420.78, and the Court holds that said debit balance is a debt of the estate in which the widow does not participate, but receives dower in the gross value of said stocks without considering said debit balance due said brokerage firm.

No appeal was taken from this order, and, on November 14, 1956, the court entered its final order allotting Evelyn dower of one-third in kind of all property of which the decedent was the owner at the time of his death and ordering the executors "to forthwith deliver and transfer title" to allotted property to her.

Evelyn paid her attorney $5,000 in 1956 as the fee agreed upon between them for his services in connection with obtaining dower generally; in 1957 she paid him $20,000 as part of the agreed fee for his services in connection with that aspect of the dower proceedings relating to the debit balance in favor of the brokerage firm. She claimed deductions in the returns for 1956 and 1957 for the respective amounts thus paid in each year, and she supports that position here by reliance upon section 212 of the 1954 Code.

Section 212 of the 1954 Code provides for the deduction by an individual of—

all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; * * *

These provisions had their origin in a 1942 amendment to the 1939 Code.[1]  Prior thereto the only comparable provisions were found in section 23(a)(1) which allowed deductions for ordinary and necessary expenses "in carrying on any trade or business."  By the 1942 amendment the deductions previously allowed only with respect to carrying on a trade or business were extended to certain nonbusiness situations. In form, the old deduction for business expenses was continued in section 23(a)(1)(A) of the 1939 Code and the new deduction for nonbusiness expenses was incorporated in the new provisions of section 23(a)(2).  And it is section 23(a)(2) of the 1939 Code from which section 212 of the 1954 Code, here involved, was derived.

But, while the new provisions extended the deduction to certain nonbusiness situations, not theretofore covered by the revenue laws, the same limitations and qualifications applicable to the deductibility of business expenses were likewise applicable to the new deduction for nonbusiness expenses.  This much is now clear beyond serious question.  See *Lykes* v. *United States*, 343 U.S. 118, 122; *Bowers* v. *Lumpkin*, 140 F. 2d 927, 928 (C.A. 4).  "A deduction under this section is subject, except for the requirement of being incurred in connection with a trade or business, to all the restrictions and limitations that apply in the case of the deduction under section 23(a)(1)(A) of an expense paid or incurred in carrying on any trade or business."  H. Rept. No. 2333, 77th Cong., 2d Sess., p. 75; S. Rept. No. 1631, 77th Cong., 2d Sess., p. 88.  And one of the restrictions and limitations upon the deductibility of expenses is that expenditures which are capital in nature are not deductible.  A capital expenditure is not regarded as a charge against current income and is not deductible as an "ordinary and necessary expense," whether it is made in the course of business or whether it is made in relation to the nonbusiness situations specified in section 23(a)(2) of the 1939 Code and section 212 of the 1954 Code.  *Bowers* v. *Lumpkin, supra* at 928–929; *Louisiana Land & Exploration Co.*, 7 T.C. 507, 515, affirmed 161 F. 2d 842 (C.A. 5); *Safety Tube Corporation*, 8 T.C. 757, 762–764, affirmed 168 F. 2d 787 (C.A. 6).  The mere fact that the new provisions refer to expenses for the "management, conservation, or maintenance of property held for the production of income" does not dispense with the limitation that the deduction is not allowable in the case of capital expenditures.  Those new provisions merely define the area in which nonbusiness expenses may be deducted provided that they otherwise satisfy the conditions for deductibility, one of those conditions being that the expenditure must not be capital in nature.

The principles outlined above are consistently recognized in the courts.  The application of these principles to specific factual situa-

---

[1] See section 121(a) of the Revenue Act of 1942, ch. 619, 56 Stat. 819.

tions, however, has occasionally produced results that appear superficially to be difficult to reconcile with results in somewhat similar situations. The reason for such apparent disharmony probably lies in the fact that it may often be difficult to draw the line in a particular case between a capital expenditure on the one hand and an ordinary expense on the other.

Turning to the facts of the present case we think that the expenditures in issue were plainly capital in nature. Two different payments are involved. The $5,000 fee was paid as an incident to establishing petitioner's dower right in specific items of property. Although it is true that she was entitled to dower as of right under Florida law, Fla. Stat. Ann., section 731.34, as amended, that right was not self-executing. Unless appropriate steps were taken to obtain dower, her rights as surviving spouse would have been fixed by the will. She did take the necessary steps, employing counsel to bring about the desired result, and she paid him $5,000 for his services in that connection. This was a charge that plainly was associated with perfecting her right to her dower interest in the decedent's property, and we hold that it was capital in nature. It was therefore not deductible.

The situation with respect to the $20,000 fee is somewhat different, but, if anything, the facts even more strongly support the conclusion that it was a capital expenditure. Petitioner was engaged in a bona fide dispute with the other beneficiaries as to whether her dower rights in the margin account were to be measured by the securities therein undiminished by the debit balance. If she were unsuccessful in her contention the property obtained by her would have been subject to a substantial claim. The litigation that terminated favorably on her behalf established her right to the property without being subject to any such adverse claim. And the fee paid by her to bring about that result, was, we think, plainly a capital expenditure. It was part of her cost in obtaining the property unencumbered and was in no real sense a proper charge against current income. Cf. *E. B. Brown, Jr.* v. *Commissioner*, 215 F. 2d 697 (C.A. 5), affirming on this issue 19 T.C. 87; *Garrett* v. *Crenshaw*, 196 F. 2d 185 (C.A. 4); *Hobart J. Hendrick*, 35 T.C. 1223, 1234–1235.

*Allen* v. *Selig*, 200 F. 2d 487 (C.A. 5), relied upon by petitioners, must be read in the light of the later opinion of the same court in *E. B. Brown, Jr.* v. *Commissioner*, *supra*, and is as distinguishable here as it was distinguishable in the *Brown* case. See 215 F. 2d at 700. Petitioners refer to several other cases but they are also distinguishable on their facts. We conclude on the facts before us that both fees in question were nondeductible capital expenditures.

*Decision will be entered under Rule 50.*