*Decision will be entered under Rule 50.*

ARTURO H. P. RAMOS AND MARY ESTELLE RAMOS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84507. Filed September 11, 1962.

*Francis J. Rogers, Esq.*, for the petitioners.
*Howard B. Sweig, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $9,753.19 in income tax of the petitioners for 1954. The facts have been presented by a stipulation which is adopted as the findings of fact.

The petitioners, husband and wife, filed their joint return with the director of internal revenue for the Lower Manhattan District of New York.

The only issue for decision is whether $20,000 paid by Arturo in 1954 to Pauline V. Hoving is deductible under section 212(2), I.R.C. 1954, as an ordinary and necessary expense for the conservation or maintenance of property held for the production of income or whether

it was a capital expenditure for the defense or perfection of title or to obtain undisputed title to a life estate in certain trust property and/or for the further purpose of defending or perfecting title to the remainder interest in that property for his children.

Henry H. Rogers executed a trust instrument on November 5, 1927, in contemplation of his daughter Millicent's marriage to A. H. P. Ramos. The marriage took place as agreed on November 7, 1927. The net income of the trust was payable to Millicent for life and at her death the trust was to be divided into equal shares, one to be held in trust for and the income paid for life to each surviving child of the aforesaid marriage. Thereafter the corpus was to be paid to that child's issue per stirpes; or in default of issue to his brothers or sisters or their issue; and in case of default of such beneficiaries, to the grantor or those entitled under his will. The petitioner, Arturo, is one of the two children of the marriage which ended in divorce on December 12, 1935. Arturo was born on November 14, 1928, and his brother, Paul, was born on February 18, 1931. Henry H. Rogers died on July 25, 1935. He left by his will a part of his residuary estate in trust for his second wife, Pauline, for life. She survived him and by remarriage became Pauline V. Hoving. She was not Millicent's mother. Millicent died on January 1, 1953.

The trustee of the Henry H. Rogers trust of 1927 filed a petition in the Supreme Court of New York in December 1953 for settlement of its account as trustee, for construction of the trust indenture and of Roger's will, and for instruction as to the disposition of the trust assets. It had not paid any trust income to Arturo or Paul up to that time. Pauline filed an answer in that proceeding in which she asserted that the continuance of the 1927 trust for Arturo and Paul after the death of Millicent contravened section 11 of the New York Personal Property Law, in that those beneficiaries were not in being when the trust was created. She therefore claimed that the corpus of the trust belonged, as a resulting trust, to the residuary estate of Rogers, in which she had an interest. Pauline also argued that the New York rule against perpetuities was violated and the contingent remainder interests failed.

Answers filed in the proceeding included one by Arturo and one on behalf of his infant son, Arturo III. Arturo claimed that the trusts for him and his brother were valid. The proceeding was settled on November 29, 1954, by a stipulation including the following:

2. The respondent, Pauline V. Hoving, hereby withdraws her answer to the petition in this proceeding and consents that an order be entered herein construing the secondary trusts established under said trust indenture as valid trusts and that the Trustee thereof shall administer the same as provided by the terms of said trust indenture.

3. The respondent, Pauline V. Hoving, assigns and transfers to the respondents, Arturo Henry Peralta Ramos and Paul Jaime Peralta Ramos any and all

interest or claim in and to any part of the trust fund established under the aforesaid trust indenture dated November 5, 1927.

4. In consideration of the foregoing provisions and upon the entry of an order embodying all of the terms and provisions of this stipulation, the respondents Arturo Henry Peralta Ramos and Paul Jaime Peralta Ramos shall pay, from their own funds, the sum of $40,000 to the respondent, Pauline V. Hoving.

The court entered an order dated December 6, 1954, in accordance with the stipulation. Arturo and Paul each paid Pauline $20,000 in November 1954 and Pauline assigned to them equally all right, title, and interest which she had or might acquire in the 1927 trust. The trustee set up separate equal trusts for the lives of Arturo and Paul. Arturo has received since then the income of the trust set up for his benefit. He received no income from the trust during 1954 but for the years 1955 through 1961, he received income from the trust which varied from $13,647.72 in 1955 to $18,031.71 in 1961. The portion thereof representing tax-exempt interest varied from a low of 32.85 percent in 1956 to a high of 50.21 percent in 1960.

Section 212(2) of the Internal Revenue Code of 1954, upon which the petitioners place their reliance, is as follows:

SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

\* \* \* \* \* \* \*

(2) for the management, conservation, or maintenance of property held for the production of income; or

The petitioners argue that "The payment of $20,000 by petitioner to Pauline V. Hoving in 1954 was deductible as an expense paid for the conservation or maintenance of property held for the production of income within the provisions of section 212(2) Internal Revenue Code." The Commissioner argues that "Petitioner's 1954 expenditure of $20,000 for the purpose of obtaining undisputed title as a life tenant of a secondary trust and for the further purpose of defending and protecting title to the corpus of that trust for the future benefit of his children as remaindermen therein represents a nondeductible capital expenditure."

The following relating to the provisions of section 212 (1) and (2) is from Judge Raum's opinion in *Robert L. Wilson*, 37 T.C. 230:

These provisions had their origin in a 1942 amendment to the 1939 Code.[1] Prior thereto the only comparable provisions were found in section 23(a)(1) which allowed deductions for ordinary and necessary expenses "in carrying on any trade or business." By the 1942 amendment the deductions previously allowed only with respect to carrying on a trade or business were extended to certain nonbusiness situations. In form, the old deduction for business expenses was continued in section 23(a)(1)(A) of the 1939 Code and the new deduction for nonbusiness expenses was incorporated in the new provisions of section

[1] See section 121(a) of the Revenue Act of 1942, ch. 619, 56 Stat. 819.

23(a)(2). And it is section 23(a)(2) of the 1939 Code from which section 212 of the 1954 Code, here involved, was derived.

But, while the new provisions extended the deduction to certain nonbusiness situations, not theretofore covered by the revenue laws, the same limitations and qualifications applicable to the deductibility of business expenses were likewise applicable to the new deduction for nonbusiness expenses. This much is now clear beyond serious question. See *Lykes* v. *United States*, 343 U.S. 118, 122; *Bowers* v. *Lumpkin*, 140 F. 2d 927, 928 (C.A. 4). "A deduction under this section is subject, except for the requirement of being incurred in connection with a trade or business, to all the restrictions and limitations that apply in the case of the deduction under section 23(a)(1)(A) of an expense paid or incurred in carrying on any trade or business." H. Rept. No. 2333, 77th Cong., 2d Sess., p. 75; S. Rept. No. 1631, 77th Cong., 2d Sess., p. 88. And one of the restrictions and limitations upon the deductibility of expenses is that expenditures which are capital in nature are not deductible A capital expenditure is not regarded as a charge against current income and is not deductible as an "ordinary and necessary expense," whether it is made in the course of business or whether it is made in relation to the nonbusiness situations specified in section 23(a)(2) of the 1939 Code and section 212 of the 1954 Code. *Bowers* v. *Lumpkin, supra* at 928–929; *Louisiana Land & Exploration Co.*, 7 T.C. 507, 515, affirmed 161 F. 2d 842 (C.A. 5) ; *Safety Tube Corporation*, 8 T.C. 757, 762–764, affirmed 168 F. 2d 787 (C.A. 6). The mere fact that the new provisions refer to expenses for the "management, conservation, or maintenance of property held for the production of income" does not dispense with the limitation that the deduction is not allowable in the case of capital expenditures. Those new provisions merely define the area in which nonbusiness expenses may be deducted provided that they otherwise satisfy the conditions for deductibility, one of those conditions being that the expenditure must not be capital in nature.

The Court there held that *Allen* v. *Selig*, 200 F. 2d 487, was distinguishable and the attorney fee "paid as an incident to establishing petitioner's dower right in specific items of property" and that paid as "part of her cost in obtaining the property unencumbered" were both capital expenditures not deductible under section 212 as ordinary and necessary expenses chargeable against the income of a single year.

The United States Court of Appeals for the Fifth Circuit in *Brown* v. *Commissioner*, 215 F. 2d 697, affirming 19 T.C. 87 on this point, also distinguished its earlier case of *Allen* v. *Selig*, among others, and said:

Of course when property is held for the production of income, any expenditure which relates to the perfection or defense of the taxpayer's title to the property can, in one sense, be said to have been an expenditure for the *conservation* of the property. On the other hand, it seems equally as sound to say that any such expenditure is more properly an element in the cost of acquiring or preserving the legal right to the income produced by the property, and therefore must be considered a capital expenditure. * * *

Arturo contended in the court proceeding pertaining to his trust that he had a valuable property right under the 1927 trust indenture, the right to receive the income from one-half of the trust corpus during his life. Pauline contended that he had no such right because the trust provisions upon which it was based were invalid under the New York law. This was a real contest involving the title or right to valuable

property and the life income therefrom. Arturo was trying to defend, protect, and, perhaps, perfect his right to the trust income for the rest of his life. That right would not have been his if Pauline had won the litigation. He contends that he was the owner of an equitable interest and the expenditure was made to conserve "property held for the production of income." He thus must take the position that he was holding title or right to valuable property of some kind and, obviously, he was trying to defend, protect, or improve his claim of right or title thereto. He claimed an equitable interest in the corpus of the trust, the right to receive for his life the income from that corpus. That whole property right was at stake in the litigation. No mere allocation of income was involved. The proceeding was, for present purposes, like a will contest in which a life estate in a testamentary trust might be lost. Cf. *E. W. Brown, Jr.*, 19 T.C. 87.

An expenditure like this one is not an ordinary expense of 1 year but is of a capital nature, not deductible under section 212(2). The expenditure was paid for the successful defense, protection, and removal of doubt from Arturo's right or title to his equitable interest in the trust corpus. Pauline, in consideration of the two $20,000 payments, conceded the validity of the trusts and "assigns and transfers to [Arturo and Paul] * * * any and all interest or claim in and to any part of the trust fund established under the aforesaid trust indenture dated November 5, 1927." Cf. *Ida Wolf Schick*, 22 B.T.A. 1067; *Samuel Cohen*, 24 T.C. 957; *Robert L. Wilson, supra; Edwin M. Klein*, 31 B.T.A. 910, affd. 84 F. 2d 310.

The Commissioner did not err in disallowing the deduction. The parties have stipulated that the petitioners are entitled to a certain other deduction for 1954.

*Decision will be entered under Rule 50.*