John S. and Elizabeth R. Lucas v. Commissioner.
Lucas v. Commissioner
Docket No. 1079-65.
United States Tax Court
T.C. Memo 1966-270; 1966 Tax Ct. Memo LEXIS 14; 25 T.C.M. (CCH) 1375; T.C.M. (RIA) 66270; December 15, 1966
Henry C. Harvey, 1750 Union Commerce Bldg., Cleveland, Ohio, for the petitioners. John P. Graham, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined a deficiency of $26,254.12 in the income tax of the petitioners for 1960. The only issue for determination is the correctness of the respondent's determination that $68,100.62 of a deduction of $74,410.62 taken by petitioners for 1960 for legal and professional fees and expenses did not constitute an allowable deduction *15 in computing the taxable income of petitioners for that year. Findings of Fact The proceeding was submitted on a stipulation of facts with accompanying exhibits. The stipulated facts are found accordingly. The petitioners are husband and wife with their principal residence in Nantucket, Massachusetts. They filed their joint Federal income tax return for 1960, prepared on the cash basis, with the district director in Cleveland, Ohio. Since John S. Lucas is party to the instant proceeding only because he and his wife filed a joint return, Elizabeth R. Lucas sometimes hereinafter will be referred to as petitioner. Under date of November 3, 1920, and at a time when petitioner was a minor, unmarried, and known as Mary Elizabeth Raible, her father, John R. Raible, as trustor, entered into an agreement with The United Banking & Savings Company of Cleveland, Ohio, as trustee, whereby he created a trust for the benefit of petitioner and her issue. In brief, the agreement provided that the income of the trust be paid to petitioner for her life and upon her death the principal of the trust be distributed to her issue equally or, in the event of failure of such issue, to the heirs-at-law *16 of John R. Raible. The trust agreement did not contain any provision respecting alteration, modification, or revocation thereof either by the trustor or by anyone else or by the trustor and another or others. The trust, created by the foregoing agreement, sometimes hereinafter will be referred to as the 1920 trust. On May 18, 1926, petitioner, then being unmarried and known as Mary Elizabeth Raible, entered into a trust agreement with The United Banking & Trust Company, formerly The United Banking & Savings Company, whereby she purported to create a trust, reserving to herself powers of revocation, amendment, or modification, for the benefit of certain beneficiaries, including herself and her issue. On the same date the petitioner transferred to the trust certain securities and interests in real estate owned by her in her own right, having at that time an aggregate adjusted basis of $262,465. The securities thus transferred included 1,726 shares of common stock of The Fanner Manufacturing Company, sometimes hereinafter referred to as Fanner Company, with an adjusted basis of $172,600. The terms and provisions of this trust, sometimes hereinafter referred to as the 1926 trust, were *17 modified and amended by petitioner from time to time after 1926 and were completely restated in a Fifteenth Supplemental Trust Agreement executed April 20, 1950, between petitioner and Central National Bank of Cleveland, sometimes hereinafter referred to as National, the corporate successor to The United Banking & Trust Company. During the month of June 1926, the following transactions occurred affecting the 1920 trust and the 1926 trust: (i) On June 16, 1926, petitioner executed an instrument addressed to The United Banking & Trust Company as trustee of the 1920 trust which purported to revoke and terminate entirely the 1920 trust; (ii) On June 17, 1926, petitioner and The United Banking & Trust Company executed a written instrument which purported to effect the addition to the 1926 trust of all assets formerly held in the 1920 trust; (iii) On June 21, 1926, all assets formerly held in the 1920 trust, consisting of securities then having an aggregate adjusted basis of $250,000 and including 1,700 shares of common stock of Fanner Company with an adjusted basis of $170,000, were in fact added to the 1926 trust. From June 21, 1926 until July 15, 1957, all trust records pertaining *18 to the 1926 trust were maintained without reference to the separate sources from which the assets held therein were obtained. By various acquisitions, consolidations, charter amendments, and changes of corporate name, National succeeded to the rights and duties of The United Banking & Trust Company as the trustee of the 1920 trust and the 1926 trust. John R. Raible died on March 3, 1948. His wife had predeceased him and he was survived only by his son, Charles Grief Raible, and his daughter, the petitioner. From 1926 until the time of his death, he, the petitioner, and the predecessor of National, and thereafter until during 1950 the petitioner and National, in dealing with the assets transferred by petitioner to the 1926 trust on May 18, 1926, and the assets added to that trust on June 21, 1926, which were formerly held in the 1920 trust, dealt with and treated such assets and other assets into which they were converted by sales, reinvestments, or otherwise as the corpus of the 1926 trust. Neither National nor any other person until 1950 questioned the right of petitioner to revoke all or any part of the 1926 trust or to exercise complete dominion over the assets held as the corpus *19 thereof. Further, National from time to time prior to 1957 permitted petitioner to make withdrawals of assets held by it as the corpus of the 1926 trust. During the period from 1940 until 1960, National, for Federal income tax purposes, treated the entire income from the assets held as the corpus of the 1926 trust, including dividends, interest, and capital gains from sales of such assets, as the taxable income of petitioner. Because of the revocable character of the 1926 trust, National in that period filed Federal fiduciary income tax returns for the trust showing all such income as distributed or distributable to petitioner and paid no Federal income tax on any such income. From 1943 to 1960, petitioners included in their joint individual income tax returns all amounts reported to them by National as being all the income, including capital gains, from the assets held as the corpus of the 1926 trust and paid Federal income taxes due thereon. In 1950, petitioners reported in their joint individual income tax return a sale of 102,780 shares of common stock of Fanner Company held in the 1926 trust, which shares, as a result of a 30 for 1 split of that stock in 1948, were derived *20 directly from the 3,426 shares transferred in 1926 to the 1926 trust. In said return, petitioners reported net proceeds from such sale of $3,746,411.22, adjusted basis for said 102,780 shares of $342,600, and long-term capital gain of $3,403,811.22, and with said return petitioners paid tax on such long-term capital gain of $850,952.81. Of the long-term capital gain thus reported in 1950 and the tax thus paid thereon, gain amounting to $1,688,989.81 and tax of $422,247.45 were attributable to 51,000 shares of Fanner Company stock derived directly from shares originally held in the 1920 trust. Following the death of John R. Raible on March 3, 1948, and in the year 1950, National, as executor of his estate, during the course of examination of the Federal estate tax return filed for such estate, discovered in the old files of The United Banking & Trust Company, its corporate predecessor, the existence of the instrument creating the 1920 trust and the other instruments and records pertaining to the revocation of said trust and the above-mentioned transactions in June 1926. National thereupon called such instruments and records to the attention of the petitioners and requested that the *21 1920 trust be reconstituted. No part of the assets held originally in the 1920 trust or subsequently in the 1926 trust, was included in the gross estate of John R. Raible for Federal estate tax purposes. Following such discovery, National, the petitioners, and their respective legal counsel pursued extensive and lengthy discussions, investigations, and research concerning the issues of fact and law raised thereby, including the study of questions relating to an accounting which would trace and segregate the assets derived from or attributable to the assets formerly held in the 1920 trust, as invested and reinvested. Subsequently the parties were unable to reach agreement as to National's request that there be a reconstitution of the 1920 trust. National thereupon, on September 10, 1957, instituted an action in the Court of Common Pleas of Cuyahoga County, Ohio, entitled "Petition for Declaratory Judgment, Decree, Instructions, Equitable Relief and/ or Money Judgment," naming petitioner and all other interested parties as defendants. National in that action sought, in substance, a determination as to whether the 1920 trust had been effectively revoked and whether the assets attributable *22 to the 1920 trust should be restored to that trust, to be held and administered under its terms. Petitioner's answer in the action alleged the proper revocation of the 1920 trust in 1926 and denied that any funds or assets were owing to the 1920 trust from the 1926 trust or that any amounts were owing by her to the 1920 trust. Since no separate records had been kept by National which showed the assets then held as the corpus of the 1926 trust which had been derived from assets originally contributed by petitioner on May 18, 1926, or the assets derived from assets transferred on June 21, 1926, which were formerly held in the 1920 trust, a firm of accountants, sometimes hereinafter referred to as the accountants, was employed by agreement of the parties to examine the records of National and its predecessor and to trace and segregate the investment and reinvestment of the two groups of principal assets. Under date of July 19, 1957, the accountants submitted a report, designated as Procedure I, segregating such assets as of July 15, 1957. After a review of this report by petitioner, National, and their counsel and conferences with the accountants the latter on February 12, 1958, prepared *23 two additional reports, designated Procedure II and Procedure III, applying partially different rules in designating transactions between the two groups of assets. By a further report, dated March 8, 1960, the accountants extended their Procedure II report from July 15, 1957 to March 1, 1960. The accountants' report of March 8, 1960, designated Procedure II as extended to March 1, 1960, showed the securities and cash held by National on the latter date as corpus of the 1926 trust as having had on March 1, 1960, an aggregate adjusted basis of $1,632,812.33 and an approximate market value of $2,346,760.87. The report further showed (1) that a portion of the foregoing assets with an aggregate adjusted basis of $879,239.06 and an approximate market value of $1,192,204.27 was derived from assets held in the 1920 trust until June 1926, (2) that a portion of such foregoing assets with an aggregate adjusted basis of $753,573.27 and an approximate market value of $1,154,556.60 was derived from assets transferred by the petitioner to the 1926 trust on May 18, 1926, as its original corpus, and (3) that petitioner previously to March 1, 1960, had withdrawn $655,580.23 from principal assets which *24 had been derived from assets held in the 1920 trust until June 1926. In the preparation of their report of March 8, 1960, the accountants took into account capital gains and the Federal income taxes thereon which would have been paid by the 1920 trust if income tax returns had been filed for it. After further extended discussions and negotiations, all parties to the proceeding in Common Pleas Court agreed on or about March 1, 1960, to a compromise of the controversy and agreed that the principal assets of the 1926 trust should be allocated and segregated in accordance with the accountants' report designated Procedure II, as extended to March 1, 1960. The agreed settlement was embodied in a settlement agreement, dated as of April 21, 1960, between petitioner and her two children by her first marriage, Elizabeth Wagley Danforth and John R. Wagley. The petitioner's first marriage was to Ernest N. Wagley, of which marriage her foregoing children were born. By her later marriage to John S. Lucas, the petitioner has additional children. By the foregoing settlement agreement of April 21, 1960, petitioner's children by her first marriage released their respective rights, titles, and interests *25 in the 1920 trust, agreed to the establishment of the trust provided by the Sixteenth Supplemental Trust Agreement, referred to below, and agreed for themselves, respectively, their respective heirs, executors, administrators, and assigns that if they survive petitioner, they would execute any assignments of their respective rights, titles, and interests in and to the 1920 trust and any other instruments required in order to effect the instant agreement and the Sixteenth Supplemental Trust Agreement. In the settlement agreement of April 21, 1960, between the petitioner and her children by her first marriage, the petitioner agreed to pay all court costs and legal fees incurred by or in behalf of Elizabeth W. Danforth and her issue and John R. Wagley in connection with the pending Court of Common Pleas action. The agreement also contained the statement that petitioner in her defensive answer in the Court of Common Pleas action alleged that her father, the settlor of the 1920 trust, made testamentary dispositions by his will for the primary benefit of petitioner's two children by her first marriage which would not have been made if her father had deemed the 1920 trust to be in existence; *26 and that as a result the restoration of such assets to the 1920 trust to be held in accordance with the original dispositive provisions thereof would be contrary to her father's intention and would produce an inequitable distribution of assets among all of the issue of petitioner and should not now be decreed by any court. On June 10, 1960, the Court of Common Pleas entered its Journal Entry in the action before it. In its Journal Entry the Court held that it had jurisdiction of the parties and subject matter of the action and jurisdiction to determine the rights, interests, and obligations of the parties; that the 1920 trust "is in all respects valid"; that the proper interpretation of the agreement creating the 1920 trust requires that the entire net income derived from the assets constituting such trust is to be distributed to petitioner during her lifetime and, upon her death, the corpus of the 1920 trust is to be distributed to the then living issue of her body per stirpes, or if no issue of her body survives her, then to the persons who would be the heirs of her father, John R. Raible, if he died intestate, a resident of Ohio, immediately following the death of petitioner; *27 that in consideration of the settlement agreement by petitioner, Elizabeth Wagley Danforth, and John R. Wagley, children of petitioner by her first marriage, there presently was no necessity to decide whether or not the 1920 trust was properly revoked or otherwise legally terminated; that therefore the question and issue were expressly left unresolved in that action and were reserved for determination, if at all, in a subsequent action, as provided in the Sixteenth Supplemental Trust Agreement, and that the 1926 trust was a revocable inter vivos trust. The Court also held that the execution by petitioner and National of the Sixteenth Supplemental Trust Agreement and the petitioner's delivery to National of the segregated assets of the 1920 trust as of March 1, 1960, and which theretofore had been held in the 1926 trust, and cash and securities in the amount of $655,580.23, representing the amount of the petitioner's withdrawals from the principal assets which had been derived from assets held in the 1920 trust until June 1926 to be held in trust in accordance with the provisions of the Sixteenth Supplemental Trust Agreement would properly effect a reconstitution of the segregated assets *28 of the 1920 trust and would discharge petitioner from all liabilities on or related to the issues raised in that action and similarly would discharge National in all of its capacities from all liabilities on or related to the issues raised in the action, with its further duties and obligations with respect to such issues being limited to the administration of the Sixteenth Supplemental Trust Agreement in accordance with the terms and provisions thereof. On June 10, 1960, signing of the Sixteenth Supplemental Trust Agreement was completed by National's signing it on that date. On that date petitioner transferred to National, to be held in trust in accordance with the Sixteenth Supplemental Trust Agreement, cash and securities, theretofore held in the 1926 trust with an aggregate adjusted basis of $1,306,263.49 and an aggregate market value of $1,847,784.50 as of March 1, 1960. Thereafter National continued to hold securities and cash with an aggregate adjusted basis of $326,548.84 and aggregate market value of $498,976.37 as of March 1, 1960, under the terms of the 1926 trust as modified and restated in the Fifteenth Supplemental Trust Agreement. The Sixteenth Supplemental Trust *29 Agreement contained the statement that petitioner did not reserve any right to amend or modify the provisions thereof in any manner nor to revoke the settlement evidenced thereby either in whole or in part. Under the Sixteenth Supplemental Trust Agreement the petitioner is to receive during her life all of the net income of the trust estate created under that agreement except for payments of $500 per month during petitioner's life to each of her two children by her first marriage. Upon the death of petitioner the remainder interest of the trust estate is to be distributed to the issue of petitioner other than her children born of her first marriage, except that in the event of the death of the petitioner without other issue, the remainder interest is to be distributed to her issue born of her first marriage, and in the event of the death of petitioner without issue, then to the then heirs of petitioner's father. In the event of certain combinations of survivors of petitioner, National, as trustee, is directed to bring an appropriate court action to determine whether the 1920 trust had been properly revoked, and alternative provisions for devolution of the remainder are made, dependent *30 upon a decision in such action. In 1960, petitioner paid and deducted in her income tax return for that year, fees for legal services, expenses, and court costs in connection with the controversy over the 1920 and 1926 trusts (including the accounting aspects of the controversy) and the settlement of the proceeding in the Common Pleas Court as follows: Jones, Day, Cockley & Reavis
$36,376.33
Mark Sperry
1,105.00
Horace Andrews
8,000.00
Emil J. Masgay, Clerk of Courts
469.99
Richard C. Garretson
250.00
Sayre, Vail & Steele
10,709.30
Arter, Hadden, Wykoff & Van Duzer
4,300.00
$61,210.62 A portion of the above-scheduled fee paid to Jones, Day, Cockley & Reavis, amounting to $6,310, has been allowed as a deduction on other grounds and is not a part of the fees and expenses at issue in this proceeding. Petitioner paid no fees or expenses for or on behalf of National. The foregoing legal fees and expenses paid by petitioner were for services rendered and expenses incurred in the representation of the following necessary parties to the declaratory judgment action: Legal representatives
Parties represented
Jones, Day, Cockley & Reavis
Petitioner
Mark Sperry
Trustee for suit for unborn heirs of Charles
Raible and Jonathan Raible (children of
petitioner's brother)
Horace Andrews
Guardian ad Litem and Trustee for suit
of born and unborn issue of petitioner
not from her marriage to Ernest Wagley
Richard C. Garretson and Arter, Hadden,
Minor children of Elizabeth Wagley Dan-
Wykoff & Van Duzer
forth and the unborn issue of Elizabeth
Wagley Danforth and of John R. Wagley
Sayre, Vail & Steele
Elizabeth Wagley Danforth and John R.
Wagley (petitioner's children born of her
marriage to Ernest Wagley)
*31 Some of the legal services for which petitioner paid the foregoing fees were rendered in connection with the questions relating to the allocation of and accounting for capital, income, and expense items as between the two groups of assets in the 1926 trust so as to segregate the groups. Such services related to the determination of reasonable means of allocation, the taking of depositions of the accountants, and related matters. The attorneys' fees allocable to these services were as follows: Jones, Day, Cockley & Reavis
$4,024
Horace Andrews
2,850
Sayre, Vail & Steele
500
Arter, Hadden, Wykoff & Van Duzer
1,200
$8,574
In 1960 petitioner also paid and deducted in her income tax return for that year the amount of $13,200 to the accountants for their fees and expenses for accounting services rendered in segregating and accounting for the assets as between the two trusts. Respondent in his notice of deficiency disallowed the deduction of all the legal and accounting fees and expenses, except for $6,310 referred to above, paid by petitioner in 1960, the aggregate disallowance amounting to $68,100.62. Opinion The instant case begins with the execution *32 by the petitioner's father in 1920, and while petitioner was a minor and unmarried, of an instrument whereby the 1920 trust was created. The instrument did not contain any provisions respecting its alteration, modification, or revocation by anyone. In brief, the instrument provided for the distribution of the trust's net income to the petitioner during her life; upon petitioner's death, leaving issue of her body, for the distribution of the trust corpus to such issue, share and share alike, and in event of failure of such issue, to the heirs of petitioner's father. On May 18, 1926, and while unmarried, the petitioner and the then trustee of the 1920 trust executed a revocable instrument whereby the 1926 trust was created with assets wholly owned by petitioner. Thereafter, on June 16, 1926, the petitioner executed an instrument addressed to the then trustee of the 1920 trust wherein she purported to revoke and terminate the 1920 trust. On the following day, June 17, 1926, petitioner executed with the foregoing trustee an instrument which purported to effect the addition to the 1926 trust of all of the assets formerly held in the 1920 trust. On June 21, 1926, all assets formerly held *33 in the 1920 trust were in fact added to the 1926 trust. Thereafter and for more than 20 years, all interested parties, including the aforementioned trustee and its successor, National, petitioner, and petitioner's father never questioned the effectiveness of petitioner's purported revocation of the 1920 trust but treated it as having effected a complete revocation of that trust. In 1950, National discovered in the files of its corporate predecessor the existence of the instrument creating the 1920 trust and other instruments and records pertaining to the revocation of such trust. Thereupon, National called such instruments and records to the attention of petitioner and requested that the 1920 trust be reconstituted by petitioner. Discussions, investigations, and research as to the matter followed. Since National and petitioner were unable to reach an agreement as to National's request, National, on September 10, 1957, instituted an action in the Court of Common Pleas entitled "Petition for Declaratory Judgment, Decree, Instructions, Equitable Relief and/or Money Judgment" naming petitioner and all other interested parties as defendants. Although the parties have not furnished us copies *34 of the pleadings in the action, they have stipulated that National in that action sought, in substance, a determination as to whether the 1920 trust had been effectively revoked and whether the assets attributable to the 1920 trust should be restored to that trust to be held and administered under its terms; and that petitioner's answer in the action alleged the proper revocation of the 1920 trust in 1926 and denied that any funds or assets were owing from the 1926 trust or that any amounts were owing by her to the 1920 trust. In the circumstances presented, we are of the opinion that petitioner's purpose in executing the revocation in question of the 1920 trust was to acquire for herself alone the legal and equitable title to the assets held in the trust free and unrestricted by the terms of the instrument under which the trust was created. The fact that she thereby acquired and exercised such ostensible titles is established by the long period during which National, its predecessor, and petitioner's father recognized and treated such titles as real and genuine. Consequently, we conclude that the origin of National's action in the Court of Common Pleas in 1957 was the petitioner's *35 purported revocation in 1926 of the 1920 trust and that the purpose of such action was to obtain a judicial determination as to the effectiveness of such revocation and the title the petitioner acquired in the assets held in the 1920 trust as a result of such revocation. A judicial determination that such revocation effectively terminated the trust leaving petitioner the sole owner of such assets would have extinguished the basis of National's action and thereby ended the action. Instead of pursuing National's action to adjudication of the question of whether the petitioner's purported revocation in 1926 of the 1920 trust had effectively revoked that trust, National and petitioner entered into a settlement agreement designated Sixteenth Supplemental Trust Agreement as set out in our findings. By that agreement, assets in amounts agreed upon by the parties and which were held in the 1926 trust, which had been established by petitioner and which was revocable, were transferred to the trust created by the Sixteenth Supplemental Trust Agreement together with comparatively small amounts of cash. Under the foregoing trust agreement the petitioner is to receive during her life all of the *36 net income of that trust except $500 a month to each of her two children born of her first marriage. Upon petitioner's death, the remainder interest of the trust is to be distributed to the issue of petitioner other than her children born of her first marriage, except that in the event of the death of petitioner without other issue, the remainder interest is to be distributed to her issue born of her first marriage, and in the event of the death of petitioner without issue, then to the heirs of petitioner's father. The agreement provides that in the event of certain combinations of survivors of petitioner, National, as trustee, is to bring an appropriate court action to determine whether the 1920 trust had been properly revoked, and alternative provisions for devolution of the remainder are made dependent upon a decision in such action. From the foregoing it is apparent that by the Sixteenth Supplemental Trust Agreement the petitioner's children born of her first marriage became entitled during the life of the petitioner to share in the income of the trust created by that agreement and petitioner's children, who survive her, other than those born of her first marriage, will receive *37 the entire corpus of that trust. The aforementioned sharing of income and receipt of the entire corpus were not possible under the instrument by which the 1920 trust was created. Furthermore, upon the execution and consummation of the Sixteenth Supplemental Trust Agreement, petitioner and National were discharged by the Court of Common Pleas from all liabilities on or related to the issues raised in National's action. The petitioners take the position on brief that the expenditures made by petitioner for the legal and professional fees in issue were ordinary and necessary expenses paid or incurred during the taxable year 1960 for the production, retention, or collection of income and for the management, conservation, or maintenance of property held for the production of income and as such are deductible under the provisions of section 212 of the Internal Revenue Code of 1954, pertinent portions of which are set out below. [1] The respondent, on the other hand, makes the following contentions with respect to the expenditures: (1) that they were of a personal or family nature and not within the contemplation of section 212 of the Code, and (2) that they were in *38 defense of petitioner's possible personal liability, or (3) were in defense of petitioner's title to the corpus of the 1920 trust which she caused to be added in 1926 to the assets of the revocable 1926 trust theretofore created by her. Concededly no part of the legal and professional (accountants') fees in issue come within the provisions of section 212(3) of the Code. Consequently our consideration of the section is limited to the applicability here of the provisions of (1) and (2). In Robert L. Wilson, 37 T.C. 230 (1961), affd. 313 F. 2d 636 (C.A. 5, 1963), we reviewed the origin, purpose, and restrictions, or limitations of those provisions and pointed out that expenditures which are capital in nature are not deductible *39 thereunder. To like effect, see Arturo H. P. Ramos, 38 T.C. 820 (1962). In United States v. Gilmore, 372 U.S. 39 (1963), and in United States v. Patrick, 372 U.S. 53 (1963), the Supreme Court reached a like conclusion with respect to the deductibility of personal, living, or family expenses. In the Gilmore case, the Supreme Court cited with approval Treasury Regulations (1954 Code) section 1.212-1(m) and (1939 Code) section 39.23(a)-15(k), which provided that: An expense (not otherwise deductible) paid or incurred by an individual in determining or contesting a liability asserted against him does not become deductible by reason of the fact that property held by him for the production of income may be required to be used or sold for the purpose of satisfying such liability. As heretofore indicated, we are of the opinion that National's action was for the purpose of obtaining a judicial determination of the validity of the ostensible legal and equitable titles exercised by petitioner over the assets of the 1920 trust upon and after her execution of the purported revocation of that trust. During the pendency of the action, the petitioner entered *40 into an agreement with her children of her first marriage whereby it became unnecessary for the Court of Common Pleas to determine the effectiveness of her purported revocation of the 1920 trust. In addition, she entered into a settlement agreement with National whereunder she created with National a trust to which she transferred as the corpus thereof assets in agreed amounts from the 1926 trust and small amounts of cash. By the terms of the trust instrument under which the new trust was created, the petitioner was enabled to share with the children of her first marriage portions of the income of the trust and to provide upon her death for the devolution of the trust corpus to her children other than those of her first marriage. In addition, the petitioner and National each received from the Court of Common Pleas a discharge from all liabilities on or related to the issues raised in National's action. Expenses paid or incurred in defending or protecting title to property are not deductible under the provisions of section 212. Estate of Joseph P. Morgan, 37 T.C. 31 (1961), affd. on this point 332 F. 2d 144 (C.A. 5, 1964). Since by her defense in National's *41 action, the petitioner was not required to transfer any property to National to hold under the terms of the agreement under which the 1920 trust was created but was enabled to create a new trust with National under the terms of which the property transferred to National is being held and in connection with which she has received a judicial discharge from all liabilities on or related to the issues raised in National's action, and since it is not shown that the benefits flowing from the legal and professional fees in issue have not extended beyond the year in controversy and will not extend indefinitely into the future, we are of the opinion they were capital in nature and not ordinary expenses of one year. Accordingly we hold that the expenses were not deductible under the provisions of section 212 here involved. Arturo H. P. Ramos, supra. Having reached the foregoing conclusion, it becomes unnecessary to consider respondent's other contention. Decision will be entered for the respondent. Footnotes
1. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income: (2) for the management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax.↩