DOROTHY SIVLEY KELCE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
KELCE v. COMMISSIONER
Docket No. 1249-77.
United States Tax Court
T.C. Memo 1978-506; 1978 Tax Ct. Memo LEXIS 6; 37 T.C.M. (CCH) 1851-79; December 26, 1978, Filed *6 Held: Legal fees expended by wife to establish her claim to be surviving wife entitled to dower rights, which claim was settled with estate, are not deductible under sec. 212, sec. 1.212-1(k), Income Tax Regs., but rather represent a capital expense incurred to prove a property right in first instance. Michael G. Goldstein, for the petitioner. Theodore F. Brill, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined deficiencies in petitioner's income taxes for the following years and in the following amounts: Taxable Year Ended
Deficiency
December 31, 1972
$ 5,702.34
December 31, 1973
1,095.08 [1]
TOTAL
$ 6,797.42
At the time she filed her petition herein petitioner was a resident of Fort Lauderdale, Florida. At all times relevant hereto, petitioner employed a cash method of *8 accounting and used the calendar year as her tax accounting period. Petitioner's Federal income tax returns for her taxable years ended December 31, 1972 and December 31, 1973 were timely filed with the internal revenue service at Chamblee, Georgia. The notice of deficiency was mailed to petitioner by certified mail on December 3, 1976. After concessions the remaining issue for disposition is the deductibility of legal fees in the amount of $552,138 expended by petitioner in pressing her claim to be declared the lawful widow, entitled to a 1/3 interest in the estate, of Merl C. Kelce. The section of the Internal Revenue Code on point is section 212(2)
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Merl C. Kelce (Kelce) died testate on May 16, 1970, leaving a gross estate for Federal estate tax purposes with a date of death value of $20,409,498. His taxable estate totaled $18,561,270. Kelce was married several times. His first wife was Francile Kelce to whom he was twice married and from whom he was twice divorced. Kelce and his *9 first wife adopted two children, George David Kelce and Karen Kelce. Kelce married his second wife, Shirley Sivley Kelce, in Mexico in 1966. This marriage was also terminated in Mexico in 1966 within a few days of its occurrence. A child was born of this union sometime in 1967. Kelce married petitioner on May 14, 1969. He was still married to petitioner when he died at the age of 64. Kelce was, at all times relevant hereto, a domiciliary of Missouri, where he died. His will was admitted to probate in the Probate Court of the City of St. Louis, Missouri on May 29, 1970. George David Kelce was designated and appointed executor. Petitioner and Kelce had entered into an ante-nuptial agreement dated May 12, 1969. This agreement provided that if either party should sue for and obtain a divorce from the other party, for whatever cause, Kelce would pay $400,000 into an irrevocable trust for petitioner's benefit within 30 days of the decree of divorce. This settlement was to be in full satisfaction of any and all rights of inheritance or other statutory rights petitioner might otherwise have had in or against Kelce, his property, or his estate, both during his lifetime and after *10 his death. Petitioner, who was Kelce's last wife, was named in neither Kelce's last will, dated October 7, 1964, nor his codicil thereto dated August 3, 1966. Being thus pretermitted, petitioner filed a timely election for dower [2] under Missouri law in the Probate Court for the City of St. Louis in which she stated that she was the surviving spouse of Kelce. She further stated that she was electing to take her legal share of the estate and that she was renouncing all provisions of Kelce's will inconsistent therewith. Petitioner also filed, with the same court, a paper entitled "Application of Surviving Spouse for Widow's Allowance," and all other elections and applications a pretermitted spouse would find it expedient to file.
Catherine Lam (Lam), also known as Catherine Lam Kelce, filed similar documents with the same Missouri court in which she claimed to be Kelce's surviving spouse.Lam was a domiciliary of the British Crown Colony of Hong Kong during the *11 years in issue. She had apparently known Kelce for many years and had, along with her children, been the recipient of several cash gifts from Kelce over the years.
Kelce's estate, through the personage of Kelce's executor George David Kelce, opposed petitioner's elections and applications contending that petitioner was not Kelce's surviving spouse. The estate was of the belief that Kelce and his second wife, Shirley Sivley Kelce, had not been domiciled in Mexico at the time of their divorce, and that the divorce was, therefore, invalid under Missouri law. Apparently the estate did not question the validity of the Mexican marriage.The estate's view was, therefore, that petitioner's marriage to Kelce was not a legal one. In the face of these conflicting claims to Kelce's estate, petitioner entered into an agreement of representation with attorneys Morris A. Shenker (Shenker) and Bernard J. Mellman (Mellman). This agreement, dated June 27, 1970, obligated petitioner to pay Shenker and Mellman $25,000 of the first $400,000 she received from the estate and 15 percent of the excess above $400,000 except that, if there was an appeal from the Probate Court decision in the matter, the *12 attorneys would receive 25 percent of the excess, plus costs. Shenker and Mellman were active on behalf of their client. They filed all of the requisite applications and elections in Missouri. They also filed the appropriate elections and renunciations to protect petitioner's rights in Oklahoma, Illinois, and Florida where ancillary administrations of Kelce's estate were being carried on. It was, apparently, Shenker and Mellman who filed suit against the estate on petitioner's behalf in the Circuit Court of the City of St. Louis in which suit petitioner claimed that, if any court of competent jurisdiction determined that she was not Kelce's legal wife on his death, she would be damaged in the sum of $9,000,000. Petitioner's attorneys also filed a contingent claim against the estate based on this suit in the Probate Court. Apparently, these same attorneys also negotiated a settlement between petitioner and Lam entitled "Settlement Agreement and Release of all Claims." This agreement was signed on May 29, 1971 and provided, in essence, that petitioner would pay Lam 4 percent of all she received from the estate in excess of $750,000. In return, Lam agreed to dismiss with prejudice *13 all her claims to any part of Kelce's estate. On May 29, 1972 petitioner signed a document entitled "Settlement Agreement" with Kelce's executor George David Kelce. This settlement was signed while the case was still under submission to the Probate Court. This agreement, also apparently negotiated by Shenker and Mellman, provided that the estate would (1) recognize petitioner as having been the lawful wedded wife of Kelce and as being his lawful surviving spouse, and (2) pay her $3.1 million in cash, and property worth an agreed-to value of $800,000. In return, petitioner agreed to accept the same in settlement of all her claims against the estate. The "property" acquired by petitioner from the estate was in the form of a house and lot, together with the contents of the house. This house and associated real property was the subject of a "joint venture" agreement (entitled Memorandum of Agreement) between petitioner and Shenker dated March 28, 1972. By the terms of this agreement the parties agreed to endeavor to sell the house as quickly as was reasonably possible. Until sold, Shenker agreed to pay 50 percent of the upkeep of the house. In return, Shenker was to receive *14 20 percent of the first $300,000 of the sales price (less the 4 percent thereof belonging to Lam), and 50 percent of the sales price in excess of $300,000 (less Lam's 4 percent). If the property sold for less than $300,000, Shenker was to pay petitioner 50 percent of the deficiency. The house was valued at $790,000 in Kelce's estate, and was sold by the joint venture for $600,000.
On or about April 4, 1972 the Probate Court found that petitioner was Kelce's surviving spouse. This finding was, in essence, the Probate Court's approval of the parties' settlement agreement. The value of the property transferred to petitioner under the agreement, less the value of sums passing to Lam under the terms of the petitioner's agreement with her, was allowed by respondent as a deduction to the estate under section 2056, which provides for the allowance of a marital deduction. A closing agreement between the estate and respondent, pursuant to section 7121, I.R.C. 1954, was signed to that effect on or about September 29, 1972. Petitioner paid attorney's fees in the amount of $552,138 to Shenker and Mellman during her taxable year 1972 and deducted said amount as being for the "conservation *15 & maintenance of assets." OPINION As noted the sole issue for disposition herein is the deductibility to petitioner under section 212(2) of the attorneys' fees paid by petitioner during her taxable year ended December 31, 1972. If we find that these payments are not currently deductible, then they must be capitalized as part of the basis of the assets involved in the litigation referred to herein. Further, if we should find that the attorneys' fees are capital expenditures, a portion thereof will be allocable to the house and real property received by petitioner from the estate and later sold at a loss. Petitioner was the third and last wife of Merl C. Kelce who died testate on May 16, 1970. Kelce was a domiciliary of Missouri at the time of his death and the principal administration of his estate took place in that state. Petitioner was pretermitted from Kelce's will. In the usual case a pretermitted surviving spouse is allowed, under Missouri law, to "elect" to take against the will, and is also entitled to a family allowance. In the case where the decedent has lineal descendents living at his death, the surviving spouse, electing to take against the will, is entitled *16 to take, by descent, 1/3 of the estate subject to the payments of claims. Section 474.160(1) Mo. Rev. Stat. (1969). Since the decedent's gross estate totaled over $20,000,000, petitioner's 1/3 share thereof would have equaled almost $7,000,000. However, questions arose with respect to whether petitioner was in fact Kelce's surviving spouse. Kelce's estate claimed that Kelce had never legally divorced his second wife. Hence, it argued, petitioner was never legally married to Kelce and she could not, therefore, be his surviving spouse. A third woman, one Catherine Lam, claimed that she, and not petitioner, was Kelce's surviving spouse. Lam filed all the appropriate elections necessary to claim for herself the surviving spouse's share of the estate. In the face of all these adverse claims to the existence of any interest of petitioner in Kelce's estate, petitioner signed a fee agreement with certain attorneys. The attorneys filed all the appropriate elections on petitioner's behalf in Missouri. They filed briefs with the Probate Court which heard the estate's objections to petitioner's elections. The attorneys filed or caused to be filed the *17 various appropriate elections and renunciations in those jurisdictions wherein ancillary administrations of the estate were being carried on, i.e., Oklahoma, Illinois, and Florida. The attorneys also filed a cause for petitioner in the Circuit Court for the City of St. Louis against Kelce's executor contending that, if the Probate Court found that she was not the decedent's lawful wife at the time of his death, she would be damaged in the sum of $9,000,000.In connection with this suit these attorneys filed in the Probate Court a contingent claim against Kelce's estate for $9,000,000 based on the allegations contained in the Circuit Court case. Apparently these same lawyers negotiated a settlement with Lam under which she withdrew her claim against Kelce's estate in return for a percentage of petitioner's recovery from the estate. These same attorneys also apparently negotiated a settlement with the estate under which petitioner received $3,900,000 in cash and property. In return for these extensive services, petitioner paid her attorneys $552,138. This amount was then deducted by petitioner for her taxable year ended December 31, 1972 under section 212(2), I.R.C. 1954. [3] Petitioner's *18 argument is that, since she was acknowledged by Kelce's estate to be Kelce's "surviving spouse" in the settlement she reached with the estate on March 29, 1972, and since the estate deducted amounts passing to her under the agreement under section 2056 which deduction was allowed by the internal revenue service and was also the subject of a closing agreement, it has been established beyond peradventure that she is Kelce's surviving spouse. Petitioner then goes on to argue that, as a pretermitted surviving spouse, she was, under Missouri law, entitled to take a third share of Kelce's estate by "descent"-- which means that on Kelce's death she had a vested property right. From this petitioner concludes that, since she spent the attorneys' fees at issue with respect to a vested right, the fees were spent to conserve and maintain her property and are deductible under section 212(2). Thus petitioner says on brief that: *19 The reality and the substance of the petitioner's situation was the fact that she already had the right to the property. She hired the attorneys to maintain and conserve the property which she already owned.
We hold for respondent. Section 212(2) allows the deduction of ordinary and necessary expenses paid or incurred for the management, conservation, or maintenance of property held for the production of income. Ramos v. Commissioner,38 T.C. 820, 822-823 (1962). Property acquired by gift, bequest, devise, or inheritance is not included in income. Section 102(a). If petitioner held any property interest in Kelce's estate on his death, it was a property interest in the nature of a claim against the estate. This claim was held by petitioner, not for the production of income, but for the production of something specifically excluded from income.Section 102. See Grabien v. Commissioner,48 T.C. 750, 753-754 (1967). On Kelce's death petitioner claimed a statutory share of his estate. The estate and Lam claimed that she had no interest in the estate. This was a real contest involving petitioner's very title in, or right to, property. That petitioner *20 settled her claim for barely more than one-half her claimed share is indication enough of the uncertainty of her attorneys that she could establish her lawful title to any portion of the estate. Petitioner's expenses were more in the nature of "[expenses] paid or incurred in defending or perfecting title to property," section 1.212-1(k), Income Tax Regs., which are capital in nature, than they were currently deductible expenses. Ramos v. Commissioner,supra at 823. Even if we should find, as petitioner would have us do, that petitioner took the property she acquired in the settlement with the estate by inheritance--petitioner has apparently overlooked section 1.212-1(5), Income Tax Regs., which says: Expenses paid or incurred in protecting or asserting one's rights to property of a decedent as heir or legatee, or as beneficiary under a testamentary trust, are not deductible. Expenditures like those in issue are not "ordinary and necessary" expenses. They are capital in nature made for the defense, protection, and perfection of petitioner's claim against the estate. Decision will be entered for the Respondent.
Footnotes
1. Petitioner has conceded on brief the correctness of respondent's adjustments for her taxable year ended December 31, 1973. This leaves only her taxable year ended December 31, 1972 for our consideration.↩
2. While the parties stipulated that petitioner filed a "timely election for dower," we note that "dower" as such was abolished in Missouri in 1969 by sec. 474.110 Mo. Rev. Stat.↩ (1969).
3. SEC. 212 Expenses for Production of Income. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- * * * (2) for the management, conservation, or maintenance of property held for the production of income * * *.↩